**PHILLIPS v. ANDERSON.**

No. 8215.

Court of Civil Appeals of Texas. Austin.

April 1, 1936.

Smith, Brownlee & Goldsmith, of Austin, for appellant.

White, Taylor & Gardner, of Austin, for appellee.

McCLENDON, Chief Justice.

Anderson sued Mrs. Phillips, his sister, for partition of the estate of their mother, Mrs. Crownover, who died intestate March 9, 1932; Anderson and Mrs. Phillips being her sole heirs at law. Mrs. Phillips, by cross-action, sought to cancel a deed of Mrs. Crownover conveying to Anderson a 1,060-acre ranch in Burnet county, and to have the ranch included in the partition as an asset of the estate. The only controversy involved in the case relates to Mrs. Phillips' cross-action. The case was tried to the court without a jury, and resulted in a judgment against Mrs. Phillips, from which she has appealed.

Appellant presents three assignments of error, which urge:

(1) The evidence conclusively shows as a matter of law that the deed was ineffective as a conveyance because (a) there was no legal delivery thereof by Mrs. Crownover; and (b) Anderson did not accept the deed during the lifetime of Mrs. Crownover.

(2) Error of the trial court in excluding testimony of Anderson's wife of statements made to her by Mrs. Crownover some time after she had signed and acknowledged the deed and delivered it to Fowler, a banker in Marble Falls, to keep and deliver to Anderson after her death.

Mrs. Crownover's husband, Anderson, father of appellant and appellee, died some 30 odd years ago. In 1914 she married Crownover, who owned the ranch and had one child, a daughter, Mrs. Johnson.

Crownover died in 1922, and devised the ranch to Mrs. Crownover for life, with remainder in fee to Mrs. Johnson. The latter conveyed her reversionary title to the ranch to Mrs. Crownover July 18, 1927, for $6,000, represented by a vendor's lien note in that amount. August 24, 1927, the unpaid balance of this note ($5,130.00) was transferred by Mrs. Johnson to the Federal Land Bank, and Mrs. Crownover executed to the bank a note for $5,400 in extension and renewal of the obligation, securing it by trust deed on the ranch.

The recited consideration and granting clause in the deed of Mrs. Crownover to Anderson, read: "* * * The sum of Ten Dollars to me in hand paid by H. R. Anderson, the receipt of which is hereby acknowledged and the natural love and affection I have for my son H. R. Anderson, and the further consideration that the said H. R. Anderson, assumes the payment of one-half the indebtedness against the hereinafter described land and premises said indebtedness being evidenced by a note to Federal Land Bank of Houston, Texas, in the sum of Fifty-four Hundred Dollars payable in semi-annual installments, and signed by Mary E. Crownover. Also the further consideration that I, the said Mary E. Crownover, shall retain all income from said land and premises during my life, and at my death shall become the property of the said H. R. Anderson, upon the payment by said H. R. Anderson of the unpaid balance due to Federal Land Bank, if any, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said H. R. Anderson of the County of Burnet, State of Texas all that certain pieces, parcels or tracts of land lying and being situated in Burnet County, Texas described as follows:"

The deed was dated September 23, 1927, was acknowledged by Mrs. Crownover before D. E. Fowler, notary public, Burnet County, Tex., September 24, 1927, and was recorded in Burnet county deed records April 16, 1932.

Fowler testified, in substance: He wrote the deed at the instance of Mrs. Crownover and took her acknowledgment to it. She told him what to put in the deed, "what the terms of the deed would be and what the trade was," and he "put down the consideration as detailed to him by Mrs. Crownover." The consideration expressed in the deed "is the consideration she told me to put in the instrument."

After she had signed and acknowledged the deed, she gave it to Fowler and told him to keep it and deliver it to Anderson after her death. He put the deed in the deposit box in the bank that formerly belonged to Crownover, Mrs. Crownover's deceased husband, where it remained until after her death, when he mailed it, in April, 1932, to Anderson at Norman, Okl., with an inclosed letter reading:

"Dear Hal: I found the enclosed deed in Uncle Alec's box. I am reasonable sure now that your mother did not have a will, as this is the behest I remembered.
"[Signed] Earnest."

Anderson testified he received this letter and the deed on April 14, 1932.

On May 2, 1932, Fowler addressed a letter to Anderson at Oklahoma City, reading:

"The deed I sent you a short time ago, from your Mother to yourself, was prepared at your mother's request, and after it was executed, she turned it over to me to be delivered to you after her death.

"At her request I kept the deed in the vault, as she did not wish to have it in her lock box."

Anderson testified that Fowler delivered this letter to him in person at Marble Falls.

Fowler further testified: After Mrs. Crownover delivered the deed to him, she never requested that it be returned to her for cancellation.

The evidence was uncontradicted that Anderson paid his one-half of the Federal Bank obligation as it accrued up to the time of his mother's death.

August 12, 1929, Mrs. Crownover entered into a contract with Anderson (later reduced to writing and signed by both parties) whereby Anderson was to have all rentals upon the ranch in excess of $1,250 per annum, in consideration of payments he had agreed to make under a contract between him and Mrs. Crownover's tenants, whereby he was to furnish $2,000, and the tenants were to do certain work to improve portions of the ranch for pecan culture. If the rentals did not amount to $1,250 per annum, Anderson was to get the profits from the pecan trees he had budded. At the expiration of the lease (January 1, 1932) Anderson was given "the privilege of negotiating a new lease on said premises for the joint benefit of himself and" Mrs. Crownover, "provided always" she

was to receive $1,250 rental from the place. Anderson testified that up to the time his mother died he received no rent from the ranch, and paid out all told approximately $3,000.

One of the grounds assigned by appellant as evidencing conclusively that there had not and could not have been "as a matter of law an acceptance of the deed by plaintiff," was his own evidence "that he did not know of his own knowledge" that the deed was in existence until after Mrs. Crownover's death. Under our holding below, we do not regard this issue as having controlling effect upon the judgment; however, we give the substance of the testimony thereon. It was Mrs. Phillips' contention that Anderson did know of the deed. She testified to a conversation with him at her home in Oklahoma City on April 13, 1932. Anderson had just had a long distance telephone conversation with Fowler. She thus details a statement he then made to her: "He said that he couldn't understand why Earnest (Fowler) would insist that he knew nothing about it (the deed)—that he couldn't understand why Earnest would say that he didn't know about it, because he was up at mother's on the day this thing was written and that he knew Earnest did know about it and that he couldn't understand why he would say that after Mama was dead."

She also testified that she wrote the above contract between Anderson and Mrs. Crownover in her office in Oklahoma City, at Anderson's request and from notes he gave her. Answering a question whether at that time she complained to him "about persuading and getting" Mrs. Crownover to sign that contract, she said: "Yes, sir, that night when he first mentioned it to me —that Mama was giving him the ranch at her death—that's the first time he ever referred to that deed."

Anderson's testimony upon this point was as follows (Mr. White and Mr. Smith were counsel for Anderson and Mrs. Phillips, respectively):

"Q. Did you know that this deed had been executed until after you received it? A. Not positively—my mother told me—

"Mr. Smith: We object to what his mother told him.

"The Court: Sustained.

"Q. I'm not asking you to state what she told you—I just asked you if you knew the deed had been executed until you re-

ceived it? A. I didn't know the deed had been executed until it was delivered to me in Norman—I never saw the deed.

"Mr. White: Take the witness.

"Cross-Examination.

"Mr. Smith: Q. Mr. Anderson, how did it come that you made the payments that you claim to have done to the Federal Land Bank—one-half of the installment notes every six months, if you didn't know about this deed? A. I was relying on my trade with—

"Mr. Smith: Wait just a minute.

"Mr. White: You asked him the question, let him go ahead and answer it.

"Q. You said you didn't know it—you made the payments didn't you?

"Mr. White: Don't you want him to answer that question?

"Mr. Smith: I will withdraw the question if the Court please.

"Q. You made those payments? A. I did.

"Q. Then you knew that this deed was in existence? A. I did not, no, sir.

"Q. That is your testimony? A. Yes, sir.

"Mr. White: You withdrew the question asking why he did that—you don't want to find out about that?

"Mr. Smith: I asked him what I wanted to know and I withdrew the question.

"Mr. White: You don't want to ask him why he did that?

"Q. Now, you say that you didn't know that this deed was in existence and now you state that it was? A. You mean prior to the time it was delivered to me?

"Q. Yes. A. I couldn't swear that it was in existence—no, sir—I couldn't swear that it was in existence then."

The issue which appellant raises as to the legal sufficiency to establish the validity of the deed as a finally delivered instrument is ruled by the decisions in Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 537, and Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 662, 5 A.L.R. 1660.

The learned reporter, Judge Wilkinson, summarizes the holdings in these cases, as follows:

Henry v. Phillips.

"*Deed—Delivery in Escrow.* The owner executed and acknowledged a deed conveying certain land to his two step-daugh-

ters, which he enclosed in a sealed envelope and delivered to the cashier of a bank for safe keeping, saying that it was a deed of some land to them, to be delivered to them after his death. Held:

"(1) That these facts showed a delivery of the deed which, whether the grantor retained any control over the instrument or right to countermand it or not, had the same effect on his death as though it had then been delivered to the grantees with a reservation to the grantor of the use of the property during his life.

"(2) That delivery in person to the grantees was not essential to pass the title.

"(3) That the proof, here considered, showed nothing evidencing a different intent by the grantor.

"(4) That on his death the title became consummate in the grantees, taking effect as of the instrument.

"(5) That evidence that the grantor offered the property for sale after making the deed was immaterial.

"(6) That an indorsement on the envelope of the names of the grantor and grantees was also immaterial.

"(7) That the evidence, being without conflict, showed delivery of the deed as matter of law, and required judgment in favor of the grantees in an action against them by the administrator to cancel the deed."

### Taylor v. Sanford.

"1.—*Deed—Delivery.* The law prescribes no form of words or action to constitute delivery of a deed. If it be so disposed of by the grantor as to evince clearly an intention on his part that it shall have effect as a conveyance, this is sufficient, without manual delivery to grantee.

"2.—*Same—Case Stated.* Grantor executed a deed of real property to grantee, caused it to be filed and recorded, and sent it to her by mail with a letter explaining his intention to make the property hers. He committed suicide on the next day, and the deed was not received by nor its existence known to her until after his death. Held that there was a completed delivery of the deed to grantee in the lifetime of the grantor. The facts that the deed did not reach her in his lifetime, and that it was in his power to recall possession after placing it in the mail, were immaterial.

"3.—*Deed—Acceptance.* That the grantee did not receive nor know of a deed of gift recorded and sent to her by mail until after the death of the grantor, and that it required of her assumption of some existing incumbrances against the property, did not defeat the conveyance for want of acceptance in his lifetime,—she having accepted and assumed payment of the incumbrances on learning the facts.

"4.—*Same—Presumption.* A delivered instrument amounting to a deed of gift should operate by a presumed assent of grantee until a dissent or disclaimer appears."

The case at bar is much stronger upon the issue of unconditional and irrevocable delivery on the part of the grantor, than either of those cases. No element of an agreement or existing consideration was present in either of them; and in neither did the grantee have knowledge of the deed's execution prior to the grantor's death. In Taylor v. Sanford, the deed required of the grantee the conveyance of certain property to the grantor; yet acceptance after grantor's death and conveying the property to his estate was held sufficient. Here the evidence shows that the deed was executed in pursuance of a contract between Anderson and his mother. Mrs. Crownover so stated to Fowler at the time she got him to draw the deed. Her recitation of consideration in the deed, over her signature, and solemnly acknowledged by her, confirmed the existence of such agreement. It is further corroborated by Anderson's payment of one-half of the Federal Bank obligation as it matured. The record affords no other satisfactory hypothesis explanatory of such payments. The amount which he contracted to expend to improve the property, if of any probative value at all, tended also to corroborate this theory. This contract was introduced by Mrs. Phillips.

Whether Anderson had such "personal knowledge" of the execution of the deed, prior to his mother's death, as to warrant his testifying that he "knew" that it had been executed is unimportant. That there was some character of contract between him and his mother by which he was to have the land at her death, and that as a part of the consideration therefor he assumed payment of one-half of the Federal Bank loan as it accrued, and the balance thereof remaining unpaid at her death is manifest. It was Mrs. Phillips' contention that there was an additional consideration, in that he agreed to remain in Marble

Falls and conduct his mother's business for her the rest of her life; and that he breached this portion of the agreement. This issue is not before us on appeal, except as involved in the ruling on excluded testimony of Mrs. Anderson, considered below.

Mrs. Phillips' counsel evidently recognized the force of the undisputed fact that Anderson paid one-half of the Federal Bank note, and sought to elicit from him an explanation therefor. When it became evident that his testimony would be that he made the payments in pursuance of a contract he had with his mother, counsel withdrew the question; and Anderson's answer was excluded, as far as it went, and he was not permitted to complete it. Whether, under the circumstances, the evidence was properly excluded is unimportant. The agreement was proved by Fowler and the recitation in the deed; and Anderson's performance of it was established.

If the deed be treated solely as a gift, still Anderson's knowledge of its existence and its acceptance prior to his mother's death is unimportant. The following from Taylor v. Sanford, above, is directly in point on this issue: "True, the gift imposed upon Miss Taylor the assumption of the payment of the three notes against the property and her conveyance to Sanford of the lot in Hamlin and the 40 acre tract in Presidio County, and required her acceptance of it, since no person can be made a grantee of property against his will. But she accepted it. She could not be expected to either accept or reject the gift until she knew of it; and since she did not know of it until after Sanford's death, her acceptance of it then sufficed. Burkey v. Burkey [Mo.Sup.] 175 S.W. 623. As a rule of reason and common sense, a delivered instrument plainly amounting to a deed of gift should operate by a presumed assent until a dissent or disclaimer appears. Dikes v. Miller, 24 Tex. 417."

So, also, it is unimportant whether Mrs. Crownover had access to the box in which the deed was deposited, and therefore retained physical control over it. As was said in Henry v. Phillips, above: "We think it immaterial, as it relates to the purpose and effect of the execution of the deed by Patillo, whether he did or not part with its custody, or whether after depositing the deed in the bank for safekeeping he retained control over it. In what manner this fact or circumstance might control the question as to what Patillo's purpose and intent were in executing and delivering the deed we are not able to see."

We find nothing in Eckert v. Stewart (Tex.Civ.App.) 207 S.W. 317, 322 (error refused), which in any way militates against our above holdings; which latter are, we think, in complete accord with and ruled by those in the two above-cited Supreme Court decisions. The facts in Eckert v. Stewart were that the deed after being signed and acknowledged by the grantor was delivered to one James to be by him delivered to a repository bank with explicit instructions that it was subject always to the grantor's control and right of disposition of the property; and was to be delivered to the grantee and become his property after grantor's death, subject, however, to grantor's right otherwise to dispose of the property. He did subsequently dispose of the specific property by will. There was clearly no unconditional delivery of the deed in escrow, which would effectually bar the grantor's right of revocation. On the contrary, such right was expressly reserved and exercised. We quote from the opinion: "If at his death he had not otherwise disposed of the property with the deed still left in the bank, it may be conceded, under the holdings of our Supreme Court, that title would have vested by it."

Subsequently to her execution of the deed there was no other disposition or attempted disposition of the property by Mrs. Crownover; and no change in the character of the deed's deposit with Fowler.

The sufficiency of the evidence to sustain a finding that Mrs. Crownover directed Fowler to deliver the deed to Anderson after her death is attacked on the ground that Fowler had made contradictory statements on this issue, in conversations with Mrs. Phillips and her attorneys shortly before the trial, in effect: "That she, referring to Mrs. Crownover, gave me the deed to keep and after she died I found the deed among my papers and mailed it to Anderson. When the deed was delivered to me, Mrs. Crownover said she did not want it recorded during her lifetime, that the land was leased out and that she got the lease money as long as she lived. That Anderson put in Two Hundred Dollars on the land that I know

of. I cannot recall what Mrs. Crownover said when she delivered the deed, that was several years ago."

Fowler was examined at considerable length on this point by Mrs. Phillips' counsel; the upshot of his testimony being that he made the statement, that he did not remember the exact words of Mrs. Crownover. Asked if he did not state "that Mrs. Crownover gave him the deed to keep and that he didn't remember anything else that she told him about the deed except that she told him to keep it," he replied, "If I did, I didn't intend to make it just that way. I know she gave it to me to keep and that she didn't want it recorded until after her death." He persisted in his statement: "It was to be turned over to Hal at her death." "I was to keep the deed and she gave me instructions but the exact words of it I don't know. * * * I know what they (her instructions) were but I don't know the exact words of them."

Suspicion is also sought to be cast upon Fowler's letter of May 2, 1932, on the ground that the evidence strongly points to its having been written at Anderson's request, in view of a prospective controversy over the fact of delivery of the deed.

█ The issues thus raised go to the credibility of the witnesses and the weight of the evidence. We are not called upon in this case to consider the evidence from that viewpoint. While Courts of Civil Appeals have jurisdiction to set aside a judgment where the evidence is of such character as to require a new trial in the interest of justice, such jurisdiction cannot be invoked without an assignment of error to that end. As already stated, the attack on the sufficiency of the evidence is presented in the assignments and otherwise in the brief, only as a matter of law, and not factually. Hall Music Co. v. Robertson, 117 Tex. 261, 1 S.W.(2d) 857.

Briscoe v. Bright's Adm'r (Tex.Com. App.) 231 S.W. 1082, 1084, is directly in point in principle on this question, the jurisdiction of this court and that of the Supreme Court being the same in weighing the legal, as distinguished from the factual, sufficiency of evidence. We quote from the opinion: "The sufficiency of proof to meet the requirement that it should clearly and satisfactorily establish a contract which the courts can enforce is presented here only as a question of law. Conceding for the purposes of this case that the contract sought to be enforced, falls within the rule requiring that its terms be proved clearly and satisfactorily and treating the question as one of law only, the evidence must be viewed most strongly in support of the trial court's judgment. The fact that the witnesses who testified may not have been disinterested, or may have made conflicting statements, or that their credibility may have been attacked, are matters with which it is not our province to deal. As we understand the rule contended for, it is not violated by objections to the evidence of this character. It only requires that the terms of the contract essential to recovery be supported by evidence sufficiently clear for the court to determine what those terms are without resorting to inference or conjecture. In this, as in every other class of cases that we now recall, the credibility of the witnesses and the weight to be given to their testimony are questions solely within the province of the jury, subject, however, to be revised by the trial judge and the Court of Civil Appeals."

█ The remaining question relates to the trial court's refusal to admit testimony of Mrs. Anderson to the effect that Mrs. Crownover made to her the statements detailed in the following excerpts from a letter written by Mrs. Anderson to Mrs. Phillips, April 21, 1928: "Hal has allowed his mother to come in between him and several wonderful openings and now it is my time to speak. She informed me Monday when she was over here for me to dye her hair, that Hal hadn't bought that ranch of hers at all that she got the loan, the deed was made to her and Hal was to receive it at her death only under certain conditions and one of the conditions was that he was to transact all her business for her and of course if he didn't come back here he couldn't transact her business. The contract with him on the place would be cancelled that we would have no more claim on it. Now, Ethel, I can't understand why Hal has mislead me in this deal. He told me he bought Mother's lifetime dower in this place that he got the loan himself and as I have often said I didn't expect either of us to realize a penny out of it for she would outlive both of us, but thought it might be of some value to Agnes Marie. Now, Hal was to make one payment a year on the place and she was to pay the other. I can't see if we were not secured in some

way we would be expected to help pay it, can you?"

We think the trial court properly excluded the testimony. The issue in the case was whether the deed was effectively delivered for the purpose of presently passing title, at the time it was turned over to Fowler in September, 1927. Statements of Mrs. Crownover to a third party, some seven months later, in derogation of the deed, its terms, or its effectiveness, were, we think, clearly inadmissible. Substantially the same question was presented in Henry v. Phillips, above, and disposed of as follows: "The testimony of the witness to the effect that after the date of the deed's execution by Patillo he listed the property for sale, and inquired often as to whether it could be sold, and of another that Patillo refused to sell him a portion of the land, but offered to sell the entire tract, was not competent testimony to prove any issue in the case. The only relevant purpose for which this testimony could have been offered was for the purpose of showing that Patillo did not execute the deed in question for the purpose of conveying the land therein described. For this purpose it was not admissible, being hearsay evidence and in disparagement of the grantor's deed duly executed. Hays v. Hays, 66 Tex. 609, 1 S.W. 895; Snow v. Starr, 75 Tex. [411] 416, 12 S.W. 673; Gilbert v. Odum, 69 Tex. 670, 7 S.W. 510; Devlin on Deeds, § 281a."

The trial court's judgment is affirmed.

Affirmed.