**Vernon WHITE et ux., Appellants,**

v.

**Lola Mae WHITE, Appellee.**

**No. 15384.**

Court of Civil Appeals of Texas, San Antonio.

Feb. 19, 1975.

—◆—

Allen C. Lee, Hondo, for appellants.

Briscoe & McGowen, Devine, for appellee.

BARROW, Chief Justice.

Appellee, Mrs. Lola Mae White, brought this suit against her son, Vernon H. White, and daughter-in-law, Lolete L. White, to set aside gift deeds to 404.01 acres of land in Frio County, to cancel two bills of sale to appellee's cattle, and to recover two cashier's checks totaling $7,500.-00, all of which were allegedly obtained from appellee through fraud and over-reaching by appellants. Appellant, Vernon H. White, sought recovery from appellee

by a cross-action for work allegedly performed on an open account. The trial court entered judgment for appellee, after a non-jury trial, and decreed a return of the land, cattle and money. It was further decreed that appellant take nothing by his cross-action.

 Appellants attack this judgment with seven assignments of error. By four points they complain that there is no evidence or insufficient evidence to support the court's finding that either Vernon or Lolete White committed acts of fraud or undue influence to support a cancellation of the transactions.[1] Another point urges that the purpose of the transfers was to defraud Mrs. White's husband, creditors or potential creditors, and therefore, equity should not permit a cancellation of such transactions as a matter of public policy. It is also asserted that the denial by the trial court of any recovery on the open account was against the great weight and preponderance of the evidence. Finally, it is urged that the case should be reversed and remanded because of the cumulative effect of these errors.

 No findings of fact or conclusions of law were requested or filed by the trial court, and therefore, the judgment should be affirmed if it can be upheld on any legal theory that finds support in the evidence. Bishop v. Bishop, 359 S.W.2d 869 (Tex.1962); Alamo Express, Inc. v. Browning Mineral & Ore Company, 457 S.W.2d 588 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.). The oral pronouncements of the trial judge made during the trial cannot be accepted as substitutes for the written findings of fact and conclusions of law authorized by Rule 296, Texas Rules of Civil Procedure (1967); Gasperson v. Madill National Bank, 455 S.

---

1. In considering the "no evidence" points, it is our duty to view the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences which are contrary to the findings. Butler v. Hanson, 455 S.W.2d 942 (Tex.1970). On the other hand, the "insufficient evidence" points require us to consider all of the evidence in the record. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 359 (1960).

W.2d 381 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.); Murray v. Murray, 350 S.W.2d 593 (Tex.Civ.App.—Dallas 1961, no writ).

■ The transactions in question took place between December, 1972, and June, 1973. During this period, appellee was living on about a 1,200 acre ranch located twenty miles southeast of Pearsall where she had lived for over forty years. Her husband, H. R. White, left her around 1947, and appellee has operated the ranch alone since that time. Appellee and her husband have three grown children: Vernon, Joe Frank and Annie Mae Richard. Vernon and Lolete, who have lived in New Mexico and Colorado for many years, had two sons, John and Harry Lee. Both boys had run away from home and had lived on the ranch with appellee for several years. Harry Lee was still living with appellee and helping her run the ranch.

In December of 1972, appellee and H. R. White decided to terminate their long separation with a divorce. The community estate of appellee and H. R. White was complicated by their long separation and by the fact that about half of the land was in the name of H. R. White.

On April 12, 1973, H. R. White made an offer to divide the land fifty-fifty, with each party to keep the personal property in his or her possession. This written offer was communicated to appellee by Vernon, and on April 13, she replied in writing that this proposal was satisfactory to her, providing she got a thirty-foot easement. Pursuant to this agreement, a written partition agreement was executed and deeds were exchanged on May 10, 1973. A hearing was held in the divorce suit on August 27, 1973, and the divorce was granted although the written judgment granting appellee a divorce and approving the property settlement was not signed until October 13, 1973.

The record is not clear how Vernon and his wife, Lolete, got involved in the divorce proceedings, but they spent most of the time between December, 1972, and June, 1973, living in a camper parked by appellee's ranch house. The testimony of appellee, who was 75 years-of-age and in poor health, is far from lucid. In fact, it was apparent to the trial court that appellee did not understand many of the questions or the legal effect of many of the transactions in dispute. However, as conceded by appellants in their brief, appellee's testimony fully supports the trial court's implied findings that the land, cattle and money were transferred to Vernon and Lolete White pursuant to the misrepresentations of Vernon that if she did not transfer the property, her husband or "the lawyers" would attach appellee's property. Appellee testified that Vernon promised to reconvey the property to her after the divorce suit was concluded. She gave Vernon a handwritten bill of sale to all her cattle on December 26, 1972, and on May 18, 1973, she executed to him a typewritten and notarized bill of sale to the same cattle. Also, on May 18, 1973, she gave Vernon a check for $5,000.00 and another for $2,500.00 which he immediately used to purchase two cashier's checks in his name. These checks have never been cashed and their whereabouts were not established.

On June 14, 1973, appellee executed three gift deeds whereby she conveyed away all of the land granted her by the partition agreement with H. R. White. She conveyed 78 acres to each of her grandsons, John and Harry Lee White.[2] She conveyed the remaining 404.01 acres to Vernon and Lolete. All conveyances are subject to a life estate in appellee. On June 18, 1973, Vernon and Lolete, at the request of appellee, conveyed an undivided 122 acres out of the 404.01 acre tract to Harry Lee White. Appellee's suit sought to set aside the latter two deeds and the judgment of the court set both of these deeds aside. Harry Lee White made no

---

2. Appellee made no complaint of these two conveyances and they are not involved in this suit.

complaint of the judgment setting aside the conveyance to him of this 122 acres.

It is seen that the gift deed and other transfers to appellants are unnatural in the sense that these conveyances disinherit the other two children of appellee for no apparent reason. Although Vernon denied that appellee's property was conveyed to him and Lolete to hold in trust, the testimony of appellee to this effect is fully corroborated by other evidence in the record. Vernon never attempted to exercise any control whatsoever over the cattle after they were purportedly conveyed to him. Nor did he make any effort whatsoever to use any of the $7,500.00. In fact, he admitted at the trial that he was holding the funds for appellee's future needs by preventing other members of the family from wasting it. He refused, however, to return same to appellee. Vernon and Lolete also recognized appellee's ownership of the 404.01 acres after the gift deed was executed in that they voluntarily conveyed an undivided 122 acres to Harry Lee White at appellee's request. Appellee's testimony is further corroborated by a letter she wrote to Vernon and Lolete just before the August divorce hearing wherein she requested that they come to the hearing and return all "her papers" to her. Finally, the testimony of appellee's grandson, John White, supports her testimony that Vernon told appellee that it was necessary to put all property in his name and that it would be reconveyed to her after the divorce trial. This record fully supports the implied findings of the trial court that the land, cattle and money were conveyed to Vernon and Lolete to hold in trust for appellee until the divorce suit was concluded.

The record further supports the implied finding that such conveyances were made as a result of fraudulent misrepresentations on the part of Vernon that such conveyances were necessary to protect appellee's estate and that the property would be reconveyed to her. Although the misrepresentations were made largely by Vernon, they were participated in by his wife and are the sole basis for her title. Appellants' four points complaining of these evidentiary findings are overruled.

Appellants urge that if appellee conveyed the property to them to defraud her husband, creditors or potential creditors, public policy prohibits appellee from enforcing the trust against her grantees. See Lott v. Kaiser, 61 Tex. 665 (1884); Letcher v. Letcher, 421 S.W.2d 162 (Tex.Civ.App.— San Antonio 1967, writ dism'd).

■■ This rule has no application here in that the conveyances were not made to defraud anyone. At the time of the conveyances, appellee and her husband had already finalized their property settlement agreement and had exchanged deeds. Therefore, the husband had no claim to any of appellee's property. Nor was there any claim or even threat that the attorneys would attach her property.[3] Rather, the unjustified fears of appellee regarding her property were largely based on the fraud and overreaching of Vernon while ostensibly acting as her advisor. The rule is recognized that where there is no creditor there is no fraud. The motive with which a conveyance is made and the fears by which it is prompted are of no importance unless there are creditors to be protected. Rivera v. White, 94 Tex. 538, 63 S.W. 125 (1901); Kirkland v. Handrick, 173 S.W.2d 735 (Tex.Civ.App.—San Antonio 1943, writ ref'd w. o. m.).

■ Although there was no real reason for appellee to convey all of her property to Vernon and his wife, it is seen that she was persuaded to do so upon Vernon's misrepresentations of the threatened attachment and his promise to reconvey it. Undoubtedly, appellee's actions were based in part on her infirmity of mind produced by age and ill health. Furthermore, she was obviously unfamiliar and ill at ease with the court procedures necessary for the di-

3. The divorce judgment requires H. R. White to pay most of appellee's attorney fees.

vorce action. In this background, Vernon was able to take unfair advantage of his fiduciary relationship with her. The trial court did not err in enforcing Vernon's promise to reconvey the property to appellee after the divorce suit was concluded. See Bounds v. Bounds, 382 S.W.2d 947 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.).

■ Appellants also complain of the take-nothing judgment on the cross-action filed by Vernon wherein he sought to recover on an open account. Prior to 1961, Vernon brought a Caterpillar tractor from New Mexico to appellee's ranch and used it to rake some brush which had been bulldozed. The sparse testimony regarding the transaction does not establish the amount of brush raked, the agreed consideration or the manner of payment. Appellant produced two handwritten sales slips, one dated May 22, 1961, and the other April 15, 1972, which indicate a charge for the work of $5,300.00, plus interest at the rate of six percent per annum for a total charge of $8,600.00. Appellee denied the authenticity of these slips although her name was signed to both. Her denial is supported by the fact that the slip purportedly dated May 22, 1961, includes a charge for accrued interest of $3,300.00. Obviously, no interest was owed at that time. There was no evidence that Vernon had even made any effort to collect any amount from appellee for the brush work. In this situation, we cannot say that the trial court abused its discretion in finding that the written ratification of this old oral account was not valid.

We have considered all of appellants' assignments of error and conclude that reversible error is not shown by any of same. Nor is reversible error presented by the cumulative effect of these points.

The judgment is affirmed.