O'Neil STOUT, Guardian of the Estate of John Thomas Stout, Appellants,

v.

Martha Lee CLAYTON, Mary Ann Metz, et al., Appellees.

No. 04-82-00204-CV.

Court of Appeals of Texas, San Antonio.

June 13, 1984.

Rehearing Denied Aug. 1, 1984.

J. Ken Nunley, Dodson, Nunley & Taylor, Hondo, Gary Pinnell, L. Wayne Scott, San Antonio, for appellants.

William E. Hooks, Jr., Huson, Clark, Hooks, Stephenson & O'Connor, San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

Plaintiff appeals from a judgment notwithstanding the verdict in which the trial court refused to set aside a deed of property from Lillie Stout to the defendants. Plaintiff, O'Neil Stout, the divorced husband of Lillie, sues as guardian of the estate of their adopted son, John. Defendants are Mary Ann Metz and Martha Clayton, Lillie's two older sisters, and, nominally, their husbands. After the jury verdict for plaintiff, the trial judge disregarded the jury finding of nondelivery of the deed and rendered judgment notwithstanding the verdict. Although this Court agrees that the trial court properly disregarded that finding, we reverse and render, basing the disposition on another ground.

The property involved is Lillie's interest in the Tampke ranch located in Bandera County. Lillie and her sisters Mary Ann and Martha each inherited an undivided one-third (⅓) of their mother's community interest in the ranch, but they allowed their father, Oscar Tampke, to continue to manage it. He died on June 26, 1977, and his will devised a specific tract of the ranch for each of his daughters. Lillie was 32 years of age at the time of his death. A valuation dispute with the Internal Revenue Service as to the ranch occurred and it was unclear whether the estate had been settled at the time of trial.

Lillie, the Tampke's youngest daughter, had been diabetic since the age of nine and her condition worsened during 1977. On July 22, 1977, shortly after the father's death, Lillie executed a deed to her share of the Tampke ranch, naming her sisters as grantees. The attorney representing the estate drew the deed but did not record the deed until the date of Lillie's death, February 16, 1978.

In his petition plaintiff pled for the imposition of a constructive trust on the property conveyed to the sisters. A constructive trust is an equitable remedy where there is a confidential relationship between grantor and grantee and the grantor relies upon the oral promise of the grantee to reconvey the property. *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, 988 (1948).

Scott, Trusts, Vol. 1, § 44.2 provides: There are numerous cases to the effect that where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in

procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise.

Section 44.2 of Scott on Trusts, *supra*, is repeated in *Mills v. Gray, supra*, 210 S.W.2d at 988. Citing 159 A.L.R. 1007, along with 35 A.L.R. 307, 80 A.L.R. 204, and 129 A.L.R. 695, the court sets out this rule:

Fraud sufficient to raise a constructive trust from an oral promise made by the grantee to his grantor is not necessarily limited to actual fraud. As the earlier annotations indicate [A.L.R. annotations], the breach of a confidential relation between the grantor and the grantee frequently is considered to be such constructive fraud as will give rise to a constructive trust.

A finding that a constructive trust should be imposed would mandate that the sisters reconvey the property to Lillie's heir at law provided there was no bar, such as fraud against creditors, proved by defendants. *See Mathews v. Mathews*, 310 S.W.2d 629, 633–34 (Tex.Civ.App.—Houston 1958, no writ).

In their answer, defendants generally denied plaintiff's allegations but did not affirmatively plead fraud. Nor did defendants file any trial amendments to their answer pursuant to TEX.R.CIV.P. 66. However, during the course of the trial, evidence was admitted without objection on the issue. By its answers to special issues the jury found: (1) Lillie *did not deliver* the deed to the defendants; (2) a confidential relationship existed between Lillie and the defendants; and (3) Lillie and the defendants agreed prior to the execution of the deed that the defendants would hold the property only so long as Lillie needed government assistance. Additionally, the trial court, prior to submission to the jury, upon defendants' motion, took judicial notice of the Social Security Act, 42 U.S.C.A. §§ 301–1397f; 42 C.F.R. §§ 435.120–435.122; 42 U.S.C.A. 1383; 20 C.F.R. 416.1205; and 20 C.F.R. 416.1201.

Defendants allude to the doctrine of fraudulent conveyance in their motion for instructed verdict and as set out in their motion for judgment notwithstanding the verdict:

... as a matter of law, Plaintiff is not entitled to invoke equitable relief which would support a judgment based on constructive trust for the reason that the evidence construed in a light most favorable to the Plaintiff (and the Jury so found) is to the effect that Lilly Stout was a participant perpetrating a fraud upon the federal government in order to receive medical and other benefits.

Defendants also moved the court to disregard the constructive trust finding (special issue three). However, the court does not disregard that finding. The court, in its judgment notwithstanding the verdict, disregards only the jury finding in special issue one, that Lillie did not deliver the deed, in rendering verdict for the defendants.

On appeal, plaintiff raises six points of error, arguing in one through four, that a constructive trust should have been imposed on the property deeded by Lillie to her two sisters. In points of error five and six, plaintiff contends the trial court should have entered judgment based on the jury finding of nondelivery of the deed.

In reviewing the ruling of the trial court granting the motion for judgment notwithstanding the verdict this Court must determine whether there is evidence to support the jury finding of nondelivery of the deed. *See* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362 (1960). In deciding a "no evidence" point we must view the evidence in the light most favorable to the jury findings, considering only the evidence and inferences which support them, and rejecting the evidence and inferences contrary to the findings. *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980); *Freeman v. Texas Compensation Insurance Co.*, 603 S.W.2d 186, 191 (Tex.1980). Judgment may be entered notwithstanding the verdict as authorized by TEX.R.CIV.P.

301 when a directed verdict would have been proper; and further, special issue jury findings may be disregarded which are immaterial or have no support in the evidence. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967). In the case at bar, the trial court could disregard the jury finding of nondelivery of the deed if there was no evidence to support it. When the evidence offered to prove a vital fact is so weak as to do no more than create a surmise or suspicion of its existence, the evidence has the legal effect of no evidence. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error, supra*, at 363.

Calvin Padgett, a cousin's son-in-law, testified that subsequent to the deed execution, Lillie gave him permission to hunt on her ranch land, claiming she still owned a third of the land. She occupied the ranch house then, and she also discussed remodeling the ranch house. Blanche Green, a cousin, testified defendant Mary Ann told her that Lillie was going to convey the property to her so she could get Medicaid, but that after her health improved, she would get the deed back. Green also testified that defendant Martha told her that she and Mary Ann decided to keep the deed the night of Lillie's death. Although the estate attorney received the executed deed on July 22, 1977, he testified he did not actually record it until the date of her death, when the sisters telephoned him from Bay Cliff, the place of Lillie's death.

■ Delivery of a deed involves two elements: (1) the grantor must place the deed within the control of the grantee, and (2) the grantor must intend to transfer the deed. *Smith v. Smith*, 607 S.W.2d 617, 620 (Tex.Civ.App.—Waco 1980, no writ); *Davis v. Davis*, 44 Tex.Civ.App. 238, 98 S.W. 198, 202 (Tex.Civ.App.1906, error ref'd). If the deed is placed in control of a third person, the question is whether the grantor parted with all dominion and control over the instrument at the time of delivery to that third person, with the intent that it take effect as a conveyance at the very time of delivery. *Ragland v. Kelner*, 148 Tex. 132, 221 S.W.2d 357, 359 (Tex.1949).

There is evidence that grantor Lillie and grantees Mary Ann and Martha discussed the purpose of the transfer of the deed was to allow Lillie to collect medical and social security disability benefits. Further, there is evidence that Mary Ann, the executrix of the estate of the father, initiated the proceeding for Lillie to convey her property. It was she who telephoned the attorney for the estate and directed him to draw the deed, and she transported Lillie to the office to sign the deed. The attorney testified he went out to the automobile, where he talked for about thirty minutes with Lillie, who was unable to come into his office. His secretary then came out to the automobile and took Lillie's acknowledgment. It was the sisters also who initiated the application by Lillie for government medical benefits when she was a patient in the hospital in June, 1977. It was Mary Ann's belief that Lillie could not obtain government aid while the property was in her name. She stated she did not remember who told her this.

The undisputed evidence establishes that Lillie signed the deed to her sisters and manually placed it in the control of the attorney, Jackson, only after he pointed out to her that once she signed the deed the property belonged to defendants. We find no evidence that she reserved the right to recall the deed. In addition, all witnesses agreed concerning the purpose of transferring title from Lillie to defendants. It is clear the purpose could not be accomplished unless the title effectively passed from Lillie to defendants.

■ Padgett's testimony, related above, has no relevance to the question of delivery. If its purpose was to show nondelivery of the deed, that testimony constituted hearsay testimony. *Phillips v. Anderson*, 93 S.W.2d 171, 177 (Tex.Civ.App.—Austin 1936, no writ). *See also Ragland v. Kelner, supra*, at 360.

The evidence is clear that Lillie and the defendants discussed the purpose of the transfer—to insure Lillie's eligibility for social security benefits and medical aid. That, however, would not constitute evi-

dence of nondelivery, for, as discussed earlier, that purpose could be achieved only if Lillie divested herself of title to the property. Apparently all the sisters believed this to be necessary. While it is true that Mary Ann did telephone the attorney and instructed him to prepare the deed, this is not relevant to whether or not Lillie had the requisite intent to convey.

We hold there is no evidence of probative force showing nondelivery. To the contrary, the evidence establishes as a matter of law that Lillie intended to divest herself of title to the property when she signed the deed, after the attorney carefully explained its effect to her.

■■■■■ It is not for this court to hold that we agree or disagree with the jury's finding that Lillie did not deliver the deed to her property or that we would have so found. Our duty is to determine whether there was some evidence upon which the jury could have based that finding, and if there is, whether the evidence amounts to more than a mere suspicion or surmise. In viewing the evidence in the light most favorable to the finding, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences contrary to the finding, we conclude there was no support in the evidence for the jury finding, and the trial court did not err in disregarding the jury finding in answer to special issue one. We overrule points of error five and six.

■■■ Defendants maintain the trial court properly granted the judgment notwithstanding the verdict based on its implied finding that Lillie engaged in a fraudulent conveyance as a matter of law. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex. 1968). A defense which will bar a suit and properly support a judgment notwithstanding the verdict must be established as a matter of law. *See Elliott v. Elliott*, 208 S.W.2d 709, 716–17 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.) (where statute of limitation barring suit was not established as a matter of law, motion for judgment notwithstanding the verdict correctly overruled). But where it was shown the trial court was justified in granting a judg-

ment notwithstanding the verdict because the cause of action was barred by the two-year statute of limitation, the appellate court affirmed. In that instance a directed verdict would also have been proper. *Hollingsworth v. Cities Service Oil Co.*, 199 S.W.2d 266, 267–68 (Tex.Civ.App.—Beaumont 1946, writ ref'd), *cert. denied*, 332 U.S. 774, 68 S.Ct. 83, 92 L.Ed. 359 (1947).

■■■ In order to demonstrate there was a fraudulent conveyance, there must be an intent to defraud. If this intent is demonstrated, then the courts will not aid a grantor (or his successors in title) to regain property deeded to a grantee in order to defraud his creditors. *Dellerman v. Mangold*, 271 S.W.2d 720, 721 (Tex.Civ.App.—San Antonio 1954, writ ref'd).

The record reflects that Lillie believed it necessary to convey the property to her sisters to collect Medicaid and social security benefits. Mary Ann testified that she, along with her sisters, was told that Lillie could not receive benefits as long as she owned land. Ron Jackson, the family attorney, testified Lillie told him that one reason she was transferring her property was to receive benefits. Lillie's treating physician testified that he had received some payments for Lillie's care from Medicaid.

The record indicates no suit has been filed by either the federal or state government to reclaim defrauded funds. *See Wells v. Jamison*, 252 S.W. 1023, 1025 (Tex.Comm'n App.1923, judgment adopted) and *White v. White*, 519 S.W.2d 689, 693 (Tex.Civ.App.—San Antonio 1975, no writ) (where there is no creditor, no fraud); *U.S. v. Wilson*, 500 F.Supp. 831, 832 (N.D.Tex. 1980) and TEX.BUS. & COM.CODE ANN. § 24.02 (Vernon 1968) (can defraud a subsequent creditor).

■■■ Assuming, however, there was a fraudulent conveyance which would be a valid bar to recovery, a directed verdict would have been proper. TEX.R.CIV.P. 301. We understand the rationale is that by disregarding the jury finding of nondelivery of the deed, the court then could find

there was a fraudulent conveyance, i.e., social security fraud against the government-creditor; thus recovery would be barred as a matter of law. Where parties have transferred land in constructive fraud of creditors, it is the policy of the law to leave the parties in the position in which they placed themselves, and any agreement on the part of the fraudulent grantees to hold the property in trust and to reconvey it will, therefore, not be entered. *Leal v. Cortez,* 603 S.W.2d 262, 263 (authorities cited therein) (Tex.Civ.App.—Corpus Christi 1980, no writ). In *Leal* there were creditor problems related to the mortgaging of certain farm lands. The lands were conveyed to another with his promise to reconvey them to the grantors after the creditor problems had subsided. The difference between those facts and the instant facts is the fraud and the innocent creditors were actually shown in *Leal.*

In this case defendants contend the transfer, which was designed to defraud the government creditor, passed title to the property, and the grantor may thereafter assert no right, title or interest in the property. *Letcher v. Letcher,* 421 S.W.2d 162, 168–69 (Tex.Civ.App.—San Antonio 1967, writ dism'd); *Dellerman v. Mangold, supra,* at 721.

■ Plaintiff, on the other hand, argues that because the deed was never delivered, the transfer was incomplete and the rule that the court must leave the parties in the position they have placed themselves is not applicable here. Where the question is one of intent to transfer, the fact finder will consider all of the circumstances preceding, during and after the transaction. The jury in this case received instructions regarding the intent of the grantor and that there must be an execution of that intention. In addition it was instructed the deed must be placed in the grantee's control for the purpose of having it become operative as a conveyance, and with the intent by the grantor to relinquish control of it. The jury found there was no delivery. When for want of the execution of the deed, the title has not passed out of the grantor, he is in no need of a decree restoring it. *Driskill v. Forbes,* 566 S.W.2d 90, 92 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.) But we have held that, based on the finding of delivery of the deed, as a matter of law, title did pass out of Lillie as grantor. Therefore, the rule that the court must leave the parties in the position they have placed themselves would apply in this case if fraud against the government creditor had been proved, and the judgment notwithstanding the verdict would be proper in those circumstances.

■ However, evidence as to any actual fraud and any actual creditor position of the government in this case was not shown. The jury and court received no evidence addressing the possible fraudulent actions of Lillie against the government, There was no evidence showing: (1) the extent of Lillie's available, non-excludable resources;[1] (2) the extent of Lillie's real property on the ranch, i.e., what precisely did Lillie inherit from her father (his will is not in the record)?; (3) what part, if any, of this property was saleable in view of the dispute with the IRS on the valuation of the acreage;[2] (4) was the property devised Lillie a homestead and thus not to be considered in determining her entitlement to Medicaid and social security benefits?;[3] (5) was the property useful to provide self-support so as to warrant its exclusion in determining social security eligibility?[4]

1. 20 C.F.R. § 416.1205 (1983) states in part that a disabled individual with no spouse is entitled to benefits provided his non-excludable resources do not exceed $1,500.

2. 20 C.F.R. § 416.1201(a) (1983) defines resources as property that could be liquidated. Thus, if property cannot be liquidated, it is not a resource.

3. 42 U.S.C. 1382b(a) (1983) allows one's home to be excluded from resources in determining eligibility. Home exclusion is defined in 20 C.F.R. 416.1222(b) (1983) and 40 Tex.Reg. § 15.3206 (1981). Under Texas law, Lillie's ranch would be considered a homestead if Lillie had shown some outward manifestations of her intent to use the house as her principal residence at a definite time. *Wells v. Jamison, supra,* at 1024–25; *Davis v. McClurkan,* 378 S.W.2d 358, 360 (Tex.Civ.App.—Eastland 1964, no writ).

4. *See* 42 U.S. § 1382b(a)(3) (1983).

**828**

Even if Lillie thought she was engaged in a fraudulent transaction, it was not proved she actually was. It is also important that we cannot ascertain from the record whether the government was a creditor. The rule is recognized that where there is no creditor there is no fraud. The motive with which a conveyance is made and the fears by which it is prompted are of no importance unless there are creditors to be protected. *White v. White, supra,* at 693. The law has no concern with the futile intent to protect the property from a claim which its owner fears may be asserted against him, but which is never asserted and does not exist. *Wells v. Jamison, supra,* at 1024.

We hold there was no evidence showing the government to be a creditor of Lillie (or her estate) as the result of an alleged fraudulent conveyance of her property. It follows there was no evidence of a conveyance in fraud of the government (creditor). (We note that the usual case involving fraudulent conveyance of property arises after the grantor has incurred a debt, and the conveyance is effectuated to defraud the already existing creditor. In this case the debt, if any, would accrue after the conveyance). It has not been shown the conveyance was made to defraud any other creditor.

As earlier remarked, the judgment notwithstanding the verdict does not decree that the trial court disregarded the third jury answer that Mary Ann and Martha would hold the property only so long as Lillie needed government assistance. The finding of the existence of a confidential relationship between the defendants and Lillie is undisputed. The evidence supports the further finding by the jury that the defendants would reconvey the property to Lillie when she no longer needed medical assistance.

Because there is no evidence to prove a conveyance in fraud of creditors, there is no bar to impressing the land with a constructive trust. We hold a constructive trust was established against the property. Points of error one through four,

that the imposition of a constructive trust is proper, are sustained.

The judgment notwithstanding the verdict is ordered set aside. The judgment is reversed and judgment is here rendered ordering defendants to execute a deed conveying the land in question to John Stout.