**Dick LUBEL, Trustee, Appellant,**

v.

**J.H. UPTMORE & ASSOCIATES &
J.H. Uptmore, Individually,
Appellees.**

**No. 04–82–00417–CV.**

Court of Appeals of Texas,
San Antonio.

June 27, 1984.

Leif M. Clark, Cox & Smith, San Antonio, for appellant.

Sidney D. Callender, San Antonio, for appellees.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from the granting of a directed verdict at the close of plaintiff's case in a suit for reformation and specific performance of a contract for the sale of land. We affirm.

The facts of the case are as follows. In May of 1977, Dick Lubel (Lubel), the appellant herein, entered into an earnest money contract with J.H. Uptmore & Associates (Uptmore), the appellees herein, for the purchase of a tract of land owned by Uptmore in the San Pedro North subdivision on the east frontage road of U.S. Highway 281. The tract under consideration was located in an unplatted section of County Block 4991, immediately adjacent to an unplatted L-shaped tract known as Lot 13, Subdivision 5 of the San Pedro North subdivision. A plat of the area had been prepared; however, Uptmore had delayed its recordation pending the addition to the plat the property subject of this lawsuit. The property, roughly the shape of a rectangle, was adjacent to the L-shaped tract that Uptmore planned to use for the construction of mini warehouses. The parties, upon executing the contract, also initialled a map of the area with the proposed property outlined in red, said map being attached to the earnest money contract and constituting the sole description of the property.[1]

Approximately two and one-half years later, the only impediment to the consumation of the sale was a city-imposed requirement that a drainage pond be created. It was at this point that Uptmore raised the insufficiency of the description of the tract to excuse himself from performance under the contract. This lawsuit was filed by Lubel seeking reformation so as to include a proper legal description of the tract, and specific performance thereunder. Uptmore moved for and received a directed verdict at the close of Lubel's case.

Lubel presents four points of error. Our disposition of the first point obviates the need to address points two, three and four.

■ In reviewing an assignment that alleges error in the granting of a directed verdict, this court must consider only the evidence and inferences most favorable to the one against whom the directed verdict was granted; in this case Lubel. *See Jones v. Tarrant Utility Co.,* 638 S.W.2d 862, 865 (Tex.1982). If there is any evidence of probative force to raise a fact issue on Lubel's theories of recovery, then we must remand the case for a new trial. *Id.*

In point of error one, Lubel alleges that he raised sufficient evidence under each element of his cause of action to require the submission of his case to the jury, such that it was error for the trial court to grant the Uptmore's motion for directed verdict. Lubel's primary support for his contention is the opinion of the Eastland Court of Civil Appeals in *Shotwell v. Morrow,* 498 S.W.2d 432 (Tex.Civ.App.—Eastland 1973, writ ref'd n.r.e.). Lubel attempts to put himself squarely within the rule laid down by that opinion.

In *Shotwell v. Morrow,* 461 S.W.2d 527 (Tex.Civ.App.—Eastland 1970), *rev'd,* 477 S.W.2d 538 (Tex.1972), the appellee agreed to sell to appellant two tracts of land. When Shotwell refused to convey, Morrow sued for specific performance. The description of the first tract was found to be sufficient at both the trial and appellate levels. As to the second tract, the court held the description to be insufficient to meet the requirements of the Statute of Frauds, TEX.BUS. & COM.CODE ANN. § 26.01, and reversed and rendered as to that tract so that Morrow take nothing. *Id.* 461 S.W.2d at 528.

An application for writ of error was granted by the Texas Supreme Court. In its opinion, the court agreed with the court of civil appeals' opinion that the second tract was insufficiently described. *Morrow*

---

**1.** This drawing refers to no other drawing or description. The contract and drawing are re- produced at the end of this opinion.

*v. Shotwell,* 477 S.W.2d 538, 541 (Tex.1972). The court, however, reversed the case and remanded it to the trial court "in the interest of justice" so as to enable Morrow to replead an action for reformation.[2]

■ The supreme court's opinion, *Morrow v. Shotwell,* 477 S.W.2d 538 (Tex.1972), established a two part exception to the general rule of the Statute of Frauds. Where a description is otherwise insufficient, but the record contains both: (1) strong evidence that the parties intended to describe a particular and identified tract in their contract, and (2) that the parties were mutually mistaken in their belief that the description used was legally sufficient for that purpose, then reformation and specific performance are proper remedies.

In the instant case, it is undisputed that the property description is insufficient and fails under the Statute of Frauds. In fact, only by admitting this may the Lubel attempt to invoke *Morrow* in his favor. As to the requirement of strong evidence of an intent to convey a specific tract of land, the court of civil appeals in the second *Shotwell* appeal, 498 S.W.2d at 435, noted that: (1) at the time the contract was signed, Morrow paid Shotwell $7,900.00; (2) Morrow went into immediate possession of the tract and remained so during the pendancy of the trial and appeal; and (3) Morrow had farmed the first tract as Shotwell's tenant for several years.

The record in our case contains no such "strong evidence." After the contract was signed, Lubel did not take possession of the property, nor had he and Uptmore had a business or other relationship in the past with regard to the tract in question so as to warrant a conclusion that the parties knew exactly which property was the subject of their agreement.

Significantly, the exhibit constituting the description of the property was prepared from a drawing provided to Lubel by Uptmore. The drawing was not introduced into evidence at trial because Lubel could not find it. Upon examination of the drawing attached to the contract, it is evident that the proposed mini warehouse site's frontage on U.S. Highway 281 does not have a distance. It is obvious that one could, for instance, locate either the Dairy Queen or Pizza Hut site by going in a southerly direction either 100 or 200 feet from the southern boundary of the private road. Since there is no frontage distance for the mini warehouse site, however, a precise beginning point for the subject tract agreed on by the parties is non-existent.

Lubel himself testified, on cross-examination, that there was no iron stake or other mark on the property at the time of the execution of the contract. He further testified that before the tract was staked, he could not find the starting point of the subject property. When asked how he "knew" that the mini warehouse site was to have 100 feet of frontage, Lubel replied "[t]hat site was agreed on because there were also some other drawings that were looked at that showed the mini warehouse sites on this tract, which is not even here in evidence." There are no "other drawings" in the record and no reference on the contract exhibit to another source whereby the frontage for the mini warehouse site could be determined.

■ Although the record contains evidence that the subject tract was 175 feet of frontage on U.S. Highway 281 and 200 feet deep and included an easement for ingress and egress, the record contains no evidence of probative force, strong or otherwise, that the parties intended to describe a particular and identified tract in their contract. We need go no further. The rule of *Morrow v. Shotwell* will apply only where there is a misdescription, not a failure of identification. *Morrow,* 477 S.W.2d at 541. Viewing only the evidence and inferences most favorable to Lubel we conclude that there is a failure of identification and accordingly

2. On remand, Morrow pled an action for reformation and specific performance. The jury found in his favor and on appeal to the Eastland court, the judgment was affirmed. The application for writ was refused, no reversible error.

Lubel is not entitled to reformation and specific performance.

Accordingly, the trial court did not err in granting the directed verdict in Uptmore's favor at the close of Lubel's case. For that reason, a determination of Lubel's remaining points of error would be fruitless. We, therefore, will not address them.

The judgment of the trial court is affirmed.

---

NO .CE   Offi.. of form prepared by the San Antonio Board of Realtors Inc , for the use of Realt. rs only
**THIS IS A LEGALLY BINDING CONTRACT, IF NOT UNDERSTOOD, SEEK COMPETENT ADVICE**

**STATE OF TEXAS** }
**COUNTY OF BEXAR** }

San Antonio, Texas

May 26, 19 77

**EARNEST MONEY CONTRACT**

SELLER   THAT   J. H. UPTMORE _____   _hereinafter called Seller,
hereby sells and agrees to convey unto DICK LUBEL TRUSTEE OR HIS ASSIGNS

PURCHASER   hereinafter called Purchaser, upon the terms and provisions herein, the following described real property situated in Bexar County, Texas, to wit:

PROPERTY   Lot_____ _____Block __ _   N.C.B. . ____ Co. Bl.4991 ___
Address   . . __ __ __ __ _____in the city of__   SAN ANTONIO

THE UNPLATTED PORTION OF COUNTY BLOCK 4991 OUTLINED IN RED ON EXHIBIT A

PRICE   The total sales price is $ 43,750.00 _____, payable as follows. $ ALL CASH

cash, of which the earnest money noted below shall be a part thereof. XXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXX XXXXXXXXXXX

PLAINTIFF'S EXHIBIT

TERMS   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX shall be pro-rated as of the closing date. If the closing shall occur before the tax rate is fixed for the then current year, the apportionment of taxes shall be upon the basis of the tax rate for the next preceding year applied to the latest assessed valuation. Seller further agrees to pay any pre-payment penalty involved herein. At the option of the Purchaser, Insurance may be pro-rated to the date of closing  Purchaser is to pay all expenses in connection with any new loan, including Mortgagee's Title Policy, preparation of legal papers, recording fees, and origination fee  If Purchaser is to assume an existing loan, any transfer fee charged for the transfer thereof shall be paid by Purchaser. Title is to be good and indefeasible or is to be made so within a reasonable time at Seller's expense and is subject to liens securing said note(s), all restrictions, easements and covenants of record and subject to zoning ordinances or laws of any governmental authority.

POSSESSION-CLOSING   Seller hereby agrees to give possession of the above described property on the date of closing, and this sale is to be closed within _60 ___ days from the date hereof, or as soon thereafter as possible

NOTICE TO PURCHASER   Notice to Purchaser is hereby given under Section 28 of the Real Estate License Act, Revised Civil Statutes of the State of Texas, that the Purchaser herein should have an abstract of this property examined by an attorney of his own choosing, or that he should be furnished with or obtain a policy of title insurance covering this property.

TITLE GUARANTY   Seller agrees to furnish Purchaser with a certificate of title guaranty prepared by a reliable title company guaranteeing the full amount of the purchase price hereunder showing good and indefeasible title in Purchaser to the above described property. Such certificate of title guaranty shall be furnished upon the closing of this purchase and the tender thereof shall be full compliance by Seller as to the sufficiency of title hereunder. Any objections to the title or conditions precedent to the issuance of certificate of title guaranty shall be pointed out in writing within the above stated time for the closing of this purchase contract and Seller shall have a reasonable time within which to meet and cure the same

TITLE OBJECTIONS   In the event title is found to be defective, and said defects cannot be cured within a reasonable time, Purchaser herein shall have the option to enforce specific performance, or to cancel and return this agreement, and receive payment in full for earnest money receipted for herein  Upon failure of Purchaser to comply with the terms of this contract for any reason except title defects, the Seller may, and at the option of the Realtor t erein shall, retain the earnest money herein as liquidated damages for breach of contract, one-half to be retained by the Seller and one-half (but not exceeding Realtor's fee herein), to be paid to Realtor herein, or specific performance may be enforced

PROFESSIONAL SERVICE FEE   Seller agrees to pay to the Realtor herein, at San Antonio, Bexar County, Texas,___ 3% _____professional service fee based on the gross sale price of herein described property and thereupon authorizes the escrow agent to pay same out of the proceeds of this sale  In the event any of the Purchasers refuse to present themselves for closing or shall refuse to close for any reason except title defects, the Purchaser specifically authorizes any escrow agent to disburse said funds to Realtor(s) and Seller in accordance with the terms of this contract. And in such event Purchaser agrees to hold such escrow agent harmless from all manner of claims, and releases said escrow agent from all liability of any nature

THIS CONTRACT IS CONTINGENT UPON THE FOLLOWING:

1. SUBJECT PROPERTY BEING PRESENTLY ZONED B-3 OR ITS EQUIVALENT AND THAT THERE ARE NO EASEMENTS OR DEED RESTRICTIONS THAT WOULD PROHIBIT IT BEING USED FOR THE OPERATION OF A SELF SERVICE CAR WASH.

2. PURCHASERS BEING ABLE TO SECURE FINANCING SATISFACTORY TO THEM WITHIN 30 DAYS FROM THE DATE OF FINAL SIGNATURES TO THIS EARNEST MONEY CONTRACT.

3. ALL UTILITIES BEING ADJACENT TO OR STUBBED TO THE SITE

4. SELLER GRANTING PURCHASERS A 20 FOOT WIDE INGRESS AND EGRESS EASEMENT THRU TO THE PRIVATE ROAD AS OUTLINED IN BLACK ON EXHIBIT A

5. PURCHASERS BEING ABLE TO SECURE A BUILDING PERMIT

6. LOT BEING SURVEYED, CORNERS STAKED, AND PROPERLY PLATTED AT SELLERS EXPENSE.

LUBEL-WISH PROPERTIES
Copyright 3 1 66

U.S. HWY. 281 NORTH

N 14° 11' 30" E
60.00'

SUBJECT PROPERTY

PROPOSED MINI WAREHOUSES

PIZZA HUT

DAIRY QUEEN

PRIVATE ROAD

UNPLATTED

2

C. B. 4991

LOT 1

OVERHANG EASEMENT SEWER EASEMENT EASEMENT

EXHIBIT A

LINE SHEET 3

SUBDIVISION PLAT
OF
PEDRO NORTH SUBDIVISION

ACRES OUT OF THE G. KOTONA SURVEY
COUNTY BLOCK 4991, BEXAR COUNTY, TEXAS