Franklin OLSON and John Olson, d/b/a Olson & Associates, Appellants,

v.

BAYLAND PUBLISHING, INC., Appellee.

No. 01–88–00469–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 2, 1989.

C. Henry Kollenberg, Schlanger, Cook, Cohn, Mills & Gossberg, Houston, for appellants.

George M. Bishop, George M. Bishop & Associates, Houston, for appellee.

Before SAM BASS, MIRABAL and COHEN, JJ.

SECOND OPINION ON REHEARING

COHEN, Justice.

Appellee's motion for rehearing is granted, but the relief sought is denied.

Our previous opinion, issued September 7, 1989, is withdrawn, and the following opinion is substituted.

The Olsons appeal from a judgment for damages of $272,500 plus attorney's fees for breach of an option contract. We hold that the deficient real property description in the contract was curable by reformation, and that the prejudgment interest is limited to six percent by article XVI, section 11 of the Texas Constitution.

In 1977, Bayland Publishing, Inc. ("Bayland") leased a commercial building at 2472 Bolsover in Houston from the Olsons. In 1979, the lease was renewed for three years, and an addendum was added granting appellee an option to purchase up to 50% ownership in "the property better known as 2472 Bolsover Bldg.," and setting out terms of the payment. Neither the lease nor the addendum mentioned two other lots owned by the Olsons that were used by Bayland and other tenants of 2472 Bolsover for parking.

On the last day of the option term, September 30, 1982, Bayland exercised its option. It set a closing date, but the Olsons did not appear. Bayland then sued for specific performance or damages and requested reformation of the contract if it was not sufficiently specific. Bayland asserted that the option included the two parking lots, in addition to the 2472 Bolsover building.

In their first point of error, the Olsons argue that the suit is barred by the statute of frauds, Tex.Bus. & Com.Code Ann. art. 26.01 (Vernon 1987), because the property description and payment terms are inadequate, and cannot be reformed. They also contend there is no evidence to support the jury's findings of mutual mistake regarding the property description.

The addendum to the lease, in its entirety, provides:

This addendum is made a part of lease [sic] dated June 1, 1979 and commencing October 1, 1979 and ending September 30, 1982, between Bayland Publishing Co. and Olson & Associates.

1. Bayland Publishing Co. is hereby granted an option to purchase up to 50% ownership in the property better known as 2472 Bolsover Bldg. at a price based upon a total property value of $1,850,000.

2. The terms shall be 20% of purchase price as cash down payment with the remaining equity amortized on a 15 yr. note at 10% interest with a balloon payment of the balance after the 10th year. This option will become void with the occurrence of any of the following:

1. The expiration of this lease.

2. Bayland Publishing moving its corporate offices from the 2472 Bolsover Building.

3. The changing of the management or control group of Bayland Publishing.

4. The death of Franklin Olson or John L. Olson.

If within the term of this lease and option a third party makes an offer to Olson & Associates to purchase the 2472 Bolsover Bldg. that it wishes to accept, Olson & Associates shall give Bayland Publishing Co. the right to purchase the entire property at the same terms and conditions that the third party is willing to purchase it. This right to purchase shall expire 15 days after Bayland has been notified of such offer. If Bayland chooses to purchase the property on the terms offered by the third party, Bayland shall be given 30 days after acceptance to close on those terms. If Bayland does not close within this allotted time Olson & Associates may proceed with the sale to the third party. If Olson does not close with the third party the option shall remain in effect to Bayland with all terms of the option remaining intact.

The addendum is signed by Franklin Olson and Mark B. Inabnet, president of Bayland.

■ In our view, the description as "the property better known as 2472 Bolsover Bldg." is inadequate to include the two parking lots within the option. Neither lot

is adjacent to the 2472 Bolsover building or located on Bolsover Street. To meet statute of frauds requirements, the property description "must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972). Here, neither the addendum nor the lease describes the parking lots or refers to a writing that does so.

> The description necessary·to meet the requirements of the statute cannot be arrived at from tenuous inferences and presumptions of doubtful validity, especially where the same writing gives rise, with equal validity, to conflicting inferences and presumptions that lead away from the subject matter of the contract. It is immaterial that the ... property was the property in the· contemplation of the parties at the time the [agreement was] written, or even that parol evidence leads the court to believe that the ... property was the subject matter of the contract. Unless the description contained in the writing leads to that conclusion with reasonable certainty, the contract is unenforceable.

*Rowson v. Rowson,* 154 Tex. 216, 221, 275 S.W.2d 468, 471 (1955).

Bayland argues that its exhibit 8 adequately describes the property. However, it was not referred to in the lease or the addendum and thus cannot bring this contract within the statute of frauds. *"[R]esort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum."* Morrow, 477 S.W.2d at 541 (quoting *Wilson v. Fisher,* 144 Tex. 53, 57, 188 S.W.2d 150, 152 (1945)) (emphasis in original).

*Garner v. Redeaux,* 678 S.W.2d 124, 128 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd, n.r.e.), relied on by Bayland, is distin-

guishable. There, the property description was written on a check and included the lot, tract, and block number, but not the county and state. The parol evidence in *Garner* did not supply the description; it identified the property from data in the memorandum.

Nor does this case resemble those where a street address was held sufficient.[1] In *Hoover v. Wukasch,* 152 Tex. 111, 118, 254 S.W.2d 507, 510 (1953), the contract described the property as "being the same property now occupied by lessee." In *Libby v. Noel,* 581 S.W.2d 761 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.), the contract mentioned a loan to be assumed, and the loan agreement contained a legal description. There is nothing comparable within the lease or option contract. We hold that the agreements do not satisfy the statute of frauds.

An agreement that fails to satisfy the statute of frauds can be reformed in equity if both parties are mutually mistaken in the belief that the description was sufficient. *Morrow,* 477 S.W.2d at 541. Here, the jury found that the parking lots were not mentioned in the addendum because of a mutual mistake. The Olsons argue that reformation cannot provide a description where none exists, and that there was no evidence of mutual mistake.

The Olsons cite *Lubel v. Uptmore & Assoc.,* 680 S.W.2d 518 (Tex.App.—San Antonio 1984, no writ), urging that reformation is not possible because this agreement completely omitted the parking lots. There, the court stated:

> Where a description is otherwise insufficient but the record contains both: 1) strong evidence that the parties intended to describe a particular and identified tract in their contract; and 2) that the parties were mutually mistaken in their belief that the description used was legally sufficient for that purpose, then reformation and specific performance are proper remedies.... The rule of *Morrow v. Shotwell* will apply only where

---

**1.** Appellants do not claim that the words "2472 Bolsover Bldg." were legally insufficient to describe the building they leased to appellee at that address. They claim only that it cannot support appellee's claim to the parking lots.

there is a misdescription, not a failure of identification.

*Id.* at 520.

In *Morrow,* there was strong evidence of intent to convey a specific tract. · Moreover, *Morrow* said nothing regarding "failure of identification," and did not decide what facts may justify reformation of a contract with an insufficient description. Indeed, the supreme court remanded the cause for a new trial, "in the interest of justice," on the issue of reformation, even though Morrow had not requested that relief. *Id.* at 542.

In *National Resort Communities, Inc. v. Cain,* 526 S.W.2d 510, 513–14 (Tex.1975), the court stated two requirements to justify reformation:

> First, [the party seeking reformation] must prove the true agreement of the parties, for it is not enough to show that both parties were mistaken about some feature of their bargain.... The second requirement for reformation is that the provision erroneously written (or included *or omitted* ) into the instrument was there by mutual mistake. It is not enough that the writing differed from the oral agreement.

*Id.* (emphasis added).

█ Bayland has cited no cases upholding reformation where the property description was as deficient as it is here. However, reformation due to mutual mistake is an equitable remedy that seeks to place the parties in the position they intended when entering the agreement. Thus, whether reformation is appropriate should not be solely determined by the descriptive language that is included or omitted, but by the strength of the evidence of mutual mistake.

The Olsons argue there was no evidence of mutual mistake in drafting the addendum. The jury found that the option failed to include the two parking lots because of a mutual mistake.

In reviewing "no evidence" points, we consider only the evidence and inferences supporting the finding, and disregard all contrary evidence. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985).

█ There was more than a scintilla of probative evidence that the two parking lots were omitted due to a mutual mistake. Mark Inabnet, president of Bayland, testified that near the time the addendum was signed, the Olsons told him that the agreement included the two parking lots. While Franklin Olson denied any intent to include the parking lots in the agreement, he admitted that he had offered to sell the building, including the lots, to Bayland in 1977 and did so again in 1978. Both lots were pledged to secure appellants' mortgage on the building. Appellee, in July 1979, leased about 50% of the building through September 30, 1982. Testimony established that the parking lots were important to building tenants because no other adequate parking space existed. Signs on the parking lots stated that parking was allowed there only for tenants of the building. When Bayland expressed an intent to exercise the option, the Olsons did not offer to close on the property other than the lots. Finally, the Olsons, who prepared the option agreement, earlier furnished to Bayland a written description of "2472 Bolsover Building" that included a legal description of the two parking lots. Taking this evidence together and viewing it in a light most favorable to the verdict, we hold that it was legally sufficient to show a mutual mistake.

The Olsons further contend that the addendum is deficient regarding the description of deferred payments and interest terms, and thus, the statute of frauds bars its enforcement. We note that the jury was not asked whether there was a mutual mistake regarding these terms, and thus, reformation is not available as to those terms. The question is whether the option fails to satisfy the statute of frauds by not including these terms.

█ The statute of frauds does not require that a writing describe the consideration or terms of payment. *Botello v. Misener–Collins Co.,* 469 S.W.2d 793, 794 (Tex.1971). Appellants' cases, except *Wheeler v. White,* 398 S.W.2d 93 (Tex. 1965), all refused to grant specific performance of contracts for the sale of land.

Here, appellee was awarded damages, not specific performance. *Wheeler v. White,* even if it is still good law after *Botello,* is distinguishable. It involved neither a contract for the sale of land nor an option contract, but rather a contract to secure a loan or furnish money to finance construction improvements. Express payment terms are the essence of a contract for financing and are more important there than in an option contract.

Point of error one is overruled.

In point of error two, the Olsons argue that the trial court erred in granting judgment for Bayland because the jury found that the claim for reformation was barred by laches. The jury found that Bayland delayed unreasonably in asserting its right to have the addendum reformed to reflect the true intent of the parties, and that this delay worked to the Olsons' disadvantage.

■ Bayland asserted its rights within the period of limitations. Absent estoppel or extraordinary circumstances, laches generally will not bar a suit brought within the limitations period. *Barfield v. Howard M. Smith Co.,* 426 S.W.2d 834, 840 (Tex.1968). Bayland could not have sued for breach of contract before it exercised the option, and it sued within 50 days of the attempted closing. Moreover, there is no evidence whatsoever that appellants changed their position to their detriment because of the delay.

Point of error two is overruled.

In point of error three, appellants argue that the trial court erred in granting judgment for appellee because there was no evidence to support the jury's finding that Bayland was ready, willing, and able to close the agreement.

■ A purchaser need not tender performance of the contract, but he must plead and prove that he was ready, willing, and able to perform in order to recover damages. *Whitney Properties Corp. v. Moran,* 494 S.W.2d 587 (Tex.Civ.App.—Dallas 1973, no writ). Appellants' argument appears to be that Bayland was not ready, willing, and able to close because it had never agreed to enter into a joint venture or management agreement, elements of the contract that the jury found were left out of the addendum by mutual mistake.

■ The president of Bayland and two board members testified that they were ready, willing, and able to close. Harry Watters, attorney and board member for Bayland, testified that Bayland was willing to go through with the closing. He also testified that he "would have been very happy to work with [appellants' attorney] in drafting the closing documents, but [he] would not participate."

Looking at the evidence in the light most favorable to the jury's findings, *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985), there was more than a scintilla of probative evidence from which the jury could have concluded that appellee was ready, willing, and able to close the transaction.

Point of error three is overruled.

■ In point of error four, the Olsons argue that the trial court erred in granting judgment for Bayland because it failed to comply strictly with the option by not stating the percentage of ownership it intended to acquire. Appellants did not raise this issue at trial by a request for a special issue, or by a motion for directed verdict, for judgment notwithstanding the verdict, or their motion for new trial. *See Salinas v. Fort Worth Cab & Baggage Co.,* 725 S.W.2d 701, 704 (Tex.1987). No special issue inquired whether appellees strictly complied with the option agreement. Because appellants did not present to the trial court "a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make," appellants have not preserved this complaint for review. Tex.R.App.P. 52. Point of error four is overruled.

■ In point of error five, appellants argue that the trial court erred in granting judgment for appellee because there was no evidence to support an award of damages. Appellants' no evidence objection to the special issue on damages was overruled by the trial court. They argue that appellee's expert only appraised the value of the

building, not the value of an interest in the building, and that the appraisal did not take into account that appellee's interest would be subject to a joint venture and management agreement. This argument has no merit. There was evidence from which the jury could conclude that the reasonable market value of a 50% interest in the building and two parking lots, including the management and joint venture agreements, as of September 30, 1982, was $1,197,500.

Appellee's appraiser testified that although he appraised the whole building, and not just a 50% interest, "if you have a 50 percent interest and you want to get out sometimes you have to take less. If you have somebody that wants to get you out because you're not getting along together sometimes they will pay more to get you out." He further testified that the value of the property would not be affected by the management agreement.

The jury found that the market value of a 50% interest in the property was $1,197,-500. This figure is $352,500 less than 50% of the market value of the property, as appraised by Bayland's expert. This indicates that the jury considered the management and joint venture agreements and the fact that the option covered only a 50% interest in the property.

Point of error five is overruled.

In point of error six, appellants argue that the trial court erred in admitting Bayland's exhibits 8 and 19, and in excluding appellants' exhibit 11.

With respect to exhibit 8, appellants' objection at trial was that the exhibit was not a document. The exhibit consisted of six pages, identified by Franklin Olson as documents he had given to the president of Bayland over the years. He did not recognize one of the pages; however, that page was removed from the exhibit. This cured the harm.

■ Bayland's exhibit 19 was a computer printout showing leasehold improvements it made. The Olsons objected that it was not produced during discovery. After their objection, the trial court had a discussion with counsel off the record and looked at appellants' request for production. He then overruled the objection. Appellants' request for production is not in the record before us. Without it and without a record of the discussion with counsel, we must assume that the trial court properly admitted the exhibit.

■ The trial court sustained Bayland's objection to exhibit 11. The exhibit was a letter written from appellants' attorney to Harry Watters, attorney for Bayland. The grounds for the objection were that the letter contained a legal opinion about the validity of the option contract, that it was hearsay, and that it was immaterial. Even though appellants said they were offering the letter just to show notice, the primary focus of the letter was appellants' legal opinion, including a lengthy interpretation of cases, relating to reformation and the statute of frauds. The trial judge properly excluded the letter based on Tex.R.Civ. Evid. 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Appellants made no attempt to edit or excise parts of the letter that were objectionable. The trial court did not abuse its discretion.

Point of error six is overruled.

■ Bayland argues in its cross-point that the trial court erred in awarding prejudgment interest at six percent, rather than 10 percent. It contends that Tex.Rev. Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987), which provides for six percent prejudgment interest, is inapplicable to this breach of contract action. We agree, but still conclude that prejudgment interest here is limited to six percent.

Article 5069–1.03 provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all *accounts and contracts ascertaining the sum payable*, commencing on the thirtieth (30th) day

from and after the time when the sum is due and payable.

(Emphasis added.)

This contract specifies neither an interest rate, a "sum payable," nor a measure of damages. Before art. 5069–1.03 can apply, a contract must "fix 'a measure by which the sum payable can be ascertained with reasonable certainty.'" *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929, 930 (Tex. 1988). Therefore, as Bayland contends, art. 5069–1.03 does not limit prejudgment interest to six percent.

■ Bayland contends that where the amount of damages is not ascertainable from the face of the contract, prejudgment interest of at least 10 percent should be awarded under Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, sections 6(a),(g) (Vernon Supp. 1989). The Olsons respond that the Texas Constitution, art. XVI, section 11, limits Bayland's prejudgment interest to six percent, and art. 5069–1.05, sec. 6 is unconstitutional because of the conflict. *See* Smith, *Prejudgment Interest on Contracts—The Forgotten Constitutional Dimension,* 26 Houston Lawyer, May–June 1989, at 20. We need not decide if the statute conflicts with the constitution because we find that the statute does not govern this case.

Article XVI, section 11, Tex.Const., provides:

> The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest; *provided, however, in the absence of legislation fixing maximum rates of interest* all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious; *provided, further, that in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6%) per annum . . . .*

(Emphasis added.)

This constitutional provision was not mentioned in *Perry,* presumably because it was not raised by the parties. *See* Smith, at 21 n. 16 and accompanying text. *Perry* construed art. 5069–1.03; it did not con-

strue the Texas Constitution. Therefore, it expressed no opinion on the issue before us.

Unlike article 5069–1.03, article XVI, section 11 covers all contracts having no agreed interest rate; it does not apply only to "accounts and contracts ascertaining the sum payable." Therefore, it controls this contract.

Bayland argues, however, that the two provisos should be read together, so that the language regarding "absence of legislation fixing maximum rates of interest" would apply to both. It contends the second clause should be read as if it said, "provided further, that *in the absence of legislation fixing maximum rates of interest,* in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6%) per annum." Because art. 5069–1.05, sec. 6(g) now provides, in certain cases, a maximum rate of prejudgment interest, Bayland argues that there is no "absence of legislation," and therefore, the statute, not the constitution, covers this contract.

Bayland thus concludes:

> Section 11 . . . should . . . mean that, in the absence of legislation fixing maximum rates of (prejudgment) interest, the rate shall not exceed six per cent in contracts where no rate of interest is agreed upon. Recalling that article 5069–1.05 is addressed specifically to prejudgment interest . . . it should be accepted as providing ten percent to be the . . . interest rate applicable. . . .

One difficulty with this argument is that art. 5069–1.05, sec. 6 took effect September 2, 1987, and does not apply to actions commenced before that date. The present suit was filed in 1982. For such actions, the prior law controls. *See* Ch. 3, sec. 3 1987 Tex.Gen.Laws 52, 1st Called Session. Bayland has cited no statute in effect in 1982 that fixed maximum prejudgment interest rates for contracts like this one. Second, art. 5069–1.05, sec. 6(a) expressly requires prejudgment interest only in wrongful death, personal injury, and property dam-

age cases. This is not such a case.[2] Thus, even if we construed the two constitutional provisos as Bayland suggests, it could not prevail because this contract is both outside the effective date and outside the scope of art. 5069–1.05, sec. 6, and in the absence of that legislation, the six percent constitutional limit would control.

For the sake of argument only, we have thus far accepted Bayland's proposed construction of the two provisos in article XVI, section 11. We express no opinion on the merits of that interpretation, but we note that the 1960 amendment of art. XVI, section 11 made important changes to the usury provisions, but did not change the legal rate provision.

> The ballot submitting the 1960 amendment to the voters made no mention of any change to the existing legal rate. The ballot described the proposed amendment as "giving the Legislature the authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest; and providing for a maximum rate of interest of ten per centum (10%) per annum in the absense of legislation fixing maximum rates of interest. H.J.R. No. 6, 56th Legislature Regular Session, 1959 Tex.Gen.Laws, p. 1223.

Smith, at 21 n. 13.

We hold that Tex.Const. article XVI, section 11 limits Bayland's prejudgment interest to six percent, and we overrule the cross-point of error.

The judgment is affirmed.

**2.** Smith, *supra* at 25 n. 23, sets out arguments for and against a broader scope for art. 5069–1.- 05, sec. 6(a).