## SOUTHWEST STONE CO. v. SYMONS.

### No. 15203.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 2, 1951.

Rehearing Denied March 9, 1951.

Malone, Lipscomb & Seay, of Dallas, for appellant.

Eugene Sherrod, Jr., of Wichita Falls, for appellee.

McDONALD, Chief Justice.

This suit arose out of a collision between a truck and a train at a railroad crossing. Appellee Symons, the owner and operator of the truck, recovered judgment for $4143.73 on a favorable jury verdict. Appellant has appealed, presenting 66 points of error in a brief containing 146 typewritten pages. We shall undertake the task of discussing the contentions of the parties in an opinion of reasonable length.

The collision occurred at night. Appellee charged that the crossing was unusually hazardous because the approach of the train was obscured by a low hill, some trees and other vegetation growing between the highway and the railroad track, and the angle at which the train crossed the highway. The first eight issues submitted to the jury presented the question of unusually hazardous crossing, and the questions of negligence of appellant in failing to provide a flagman, signal light, or signal bell at the crossing, and the accompanying questions of proximate cause. At the time of the collision appellee was traveling in a northerly direction along the highway and the train was proceeding in a westerly direction.

The train in question consisted of an engine and six cars being pushed ahead of the engine. The cars, in which stone or gravel were usually hauled, were low cars, somewhat less in height than the engine. The leading car of the train, as it proceeded west, collided with appellee's truck. Some of the witnesses referred to the most westerly car of the train as the front or foremost car of the train, others referred to it as the rear of the train. We shall refer to it as the front car, and to the end of the car which collided with the truck as the front end of the car, because of the

direction in which the train was then traveling.

Appellee also charged appellant with negligence in two other respects, one being the failure of appellant to have sufficient light on the front end of the car to warn appellee of the approach of the train, the other being the failure of a flagman or switchman who was riding on the front car to use his lantern in a proper manner to warn appellee of the approach of the train. Issues were submitted to the jury and answered favorably to appellee on these charges.

Issues of contributory negligence were submitted to the jury and answered favorably to appellee.

■ Some of appellant's points of error are to the effect that there was no evidence to support the verdict, that appellant should have had an instructed verdict, that appellee was guilty of contributory negligence as a matter of law, and that the various acts of negligence found by the jury could not, as a matter of law, have been the proximate cause of the collision. We are required by many decisions, as against these contentions, to consider the evidence in the light most favorable to the verdict, and in stating the facts we shall do so with this rule in mind.

■ Appellant's contention with respect to the question of unusually hazardous crossing, briefly put, is that the crossing was open and visible to travelers along the highway, and that there was nothing to obstruct a view of the train as it approached and crossed the highway. Numerous photographs were introduced in evidence and appellant argues that these photographs, together with other evidence, show conclusively that there was nothing unusually dangerous about the crossing. Appellee's contention is that the photographs relied on by appellant do not show accurately the condition of the crossing at the time of the collision. Appellee says that the photographs were taken in the winter and that the collision occurred in the summer, and that the conditions created by the presence of the trees and other vegetation were materially different at the

time of the collision from what they were when the photographs were taken. Appellee also says that the evidence shows that the area between the track and the highway was burned off between the time of the collision and the time the photographs were taken, and that some of the vegetation which existed at the time of the collision was destroyed when the area was burned off.

Appellee, and the man who was riding in the truck with him, both testified that they saw the headlight of the engine, as the truck approached the crossing, about 100 yards east of the crossing, that they thought the engine was either standing still or going in the other direction, and that they thought the truck would have sufficient time to cross the track in safety ahead of the engine. Both testified that they did not and could not see the six cars which were being pushed ahead of the engine until a brief moment before the collision, when they saw the leading car coming onto the highway within a few feet of appellee's truck. Their testimony was that appellee brought his truck almost to a complete stop before reaching the crossing, and that appellee then drove ahead when it appeared that the engine was far enough away for appellee to cross ahead of it. They said that they did not see any light on the front car of the train, and that they did not see the flagman or switchman standing on the leading car and did not see him wave a lantern.

Members of the train crew also testified that appellee brought his truck almost to a stop shortly before he reached the track, and then increased his speed as he started across the track.

Under the circumstances, when we view the testimony which is favorable to the verdict and disregard that which is against it, as we are required to do, we feel compelled to say that the issue of extra-hazardous crossing was one for the jury to decide. If appellee's testimony and that of his companion is believed, appellee could not see the six cars being pushed ahead of the engine because of the conditions above mentioned. The claim of unusually hazardous crossing is not eliminated by the fact that the headlight of the engine was visible, nor by the fact that appellee saw the headlight of the engine and knew that a train was in the vicinity of the crossing. The proximate cause of the collision, from appellee's standpoint, was the fact that the six cars in question, which extended a total distance of some three hundred feet ahead of the engine, were hidden from appellee's view. If the conditions surrounding the crossing were such as to hide this portion of the train, it cannot be said as a matter of law that there was no issue for the jury on the question of extra-hazardous crossing, nor can it be said that the negligence of appellant, predicated on the duties imposed on it by reason of the extra-hazardous nature of the crossing, could not have been the proximate cause of the collision. If the engine had been the front end of the train, rather than the car three hundred feet ahead of the engine, it could reasonably be concluded from the evidence that appellee and his truck would safely have crossed the track before the engine would have reached the highway.

Certain cases are cited by appellant in which the traveler collided with a train which already occupied the crossing at the time of the collision. In other words, the traveler ran into the side of a train which was already across the highway. In those cases it was held that the lack of a flagman or bell or signal light could not have been the proximate cause of the collision, on the theory that if the traveler did not see an object as big as the train itself, across the highway, he would not have seen a flagman or signal light or would not have heard a bell. But we do not have such a situation in the present case. This is not a case where a motorist apparently took no heed of the fact that a railroad crossing was ahead and exercised no care for his own safety as he approached it. In this case appellee reduced the speed of his truck, looked for a train, saw the headlight of the engine, and proceeded across the track only after he thought there was no danger of collision with the engine. He knew of the crossing, he knew of the presence of the train, and gave attention to the presence of the train, but, according to his tes-

timony, he could not and did not see the cars being pushed ahead of the engine because of the things that obstructed his view. We hold that the answers to the jury to the first eight issues had support in the evidence, and we further hold that the evidence did not show appellee guilty of contributory negligence as a matter of law.

■ In McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 447, the Supreme Court quoted with approval the following excerpt from the opinion in Gulf, C. & S. F. R. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227: "According to the rule in this court, in order that an act shall be deemed negligent, per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it."

■ The Supreme Court said in Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, 226: "The rule is that, if the evidence is conflicting, the jury must decide the conflict; and if the evidence is not conflicting, but reasonable minds might differ as to its effect, still a fact issue is presented."

This court held, in Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683, writ of error refused, where the plaintiff was injured at a railroad crossing, that since the evidence showed that the plaintiff exercised some care for his own safety, the question of the degree of his care was one for the jury to decide.

■ The charge defined "Extra-Hazardous Crossing" as follows: "By the term 'Extra Hazardous Crossing', is meant a particular crossing which is shown to be more than an ordinarily dangerous one attended with unusual or extra hazards, a crossing so peculiarly dangerous that prudent persons cannot use the same with safety unless extraordinary means are used to protect such crossing."

Appellant says that the phrase "in the exercise of ordinary care" should have followed the words "prudent persons." We overrule the contention under authority of

Missouri, K. & T. Ry. Co. v. Long, Tex. Com.App., 299 S.W. 854. We also overrule the contention that the charge varied fatally from the pleading that the crossing was extraordinarily hazardous and dangerous.

■ We overrule the contention that the issue inquiring whether the crossing was more than ordinarily dangerous as a night time crossing was erroneous because it contained the phrase, "on the occasion in question." Such a phrase was held to have been erroneously included in the special issue in Walker v. Texas & N. O. R. Co., Tex.Civ.App., 150 S.W.2d 853, but the holding was based on the fact that it was foggy on the night in question, and the jury might have understood the inquiry to be whether the crossing was extra-ordinarily hazardous on a foggy night. We have no such situation in the present case. An issue similar to the one contained in the present charge was held correct in Gulf, C. & S. F. Ry. Co. v. Picard, Tex.Civ.App., 147 S.W.2d 303, writ. dis. j. c. See also, Texas & N. O. R. Co. v. Singler, Tex.Civ. App., 28 S.W.2d 946, writ dis. Appellant further says that the issue as framed did not confine the jury to the conditions alleged as constituting the crossing an unusually dangerous one, and gave the jury no standard or guide to follow in determining the question. As we see it, the only conditions testified about were those described in the pleadings. The issue directed the jury to find from the preponderance of the evidence. Under the record before us, there is no ground for believing that the jury considered any condition other than those pleaded and proved.

■ Under another point of error appellant says that the issues inquiring as to negligence in not having a flagman, a signal light, and a signal bell, should have been submitted conditionally on an affirmative answer to the hazardous crossing issue. We are unable to see any error in this respect, nor can we see any reason for believing that the verdict would have been different if the issues in question had been submitted conditionally. The usual complaint about conditional submission of issues is that it was error to submit certain

issues conditionally because the jury were thus advised of the effect of their answers.

 Appellant says that the issues regarding lack of a flagman, signal light and signal bell are subject to complaint because no issues were submitted to the jury inquiring, in effect, if there was any duty on appellant to furnish such flagman, light and signal. The contention is overruled. The finding of duty was implied in the findings on hazardous crossing and negligence. The duty was to do what a reasonably prudent person would have done under the same or similar circumstances.

██ Complaint is made of the second issue, which inquired if appellant knew or by the exercise of reasonable diligence should have known that the crossing was more than ordinarily dangerous as a night time crossing. While we doubt if a finding in this respect was essential to a recovery by appellee, we can see no error in the submission of the issue.

██ In the course of his argument to the jury appellee's counsel said: "Now, they were out there pushing cars on this track in the night time. It is the pushing of them that is the unusual thing. It is a dangerous thing. It is an extraordinarily hazardous thing."

Appellant's counsel then objected on the ground that the argument was not supported by the pleadings. After the objection was overruled, appellee's counsel continued to argue somewhat to the same effect, concluding with a comment concerning the kind of light on the front of the leading car of the train. No further objection was made by appellant's counsel. As will be discussed later, a ground of negligence alleged by appellee, and submitted to the jury, was the lack of a sufficient light on the front of the leading car, and another ground of negligence alleged and submitted to the jury was the failure of a switchman riding on the train to use his lantern in a proper manner to warn appellee of the approach of the train. It is our opinion that this matter presents no reversible error.

██ Appellee, and the man riding with him, testified that they saw no light on what we have called the front end of the leading car of the train, the car which collided with appellee's truck. Members of the train crew testified that there were two coal oil lanterns showing a red light, one at each corner of the front end of the car in question. Appellee charged negligence in failing to have sufficient light on the front end of this car to warn appellee of the approach of the train. The matter was submitted to the jury in special issues 9, 10 and 11. The ninth issue inquired if there was "insufficient light maintained by the defendant on the rear of the gravel cars at the time and on the occasion in question," and the tenth issue inquired if "the failure of said defendant to maintain sufficient light on such foremost gravel car * * * amounted to negligence on the defendant's part." It is clear that all parties concerned understood that reference was being made in these issues to what we have termed the front end of the leading car. These issues, and what purported to be the accompanying proximate cause issue, were answered favorably to appellee.

A number of points of error are directed at the submission of this ground of negligence. Under Point 41, it is argued that there was no duty to have lights on the car if the crossing was not hazardous. Under Point 42, it is charged that the ninth issue was a comment on the weight of the evidence, was misleading and confusing, furnished the jury no guide or standard, and placed a greater burden on appellant than was required by law. The substance of the complaint in points 43, 44 and 45 is that the answers of the jury had no support in the evidence.

The duty to have a light on what was in fact the front end of this train did not depend on the question whether or not the crossing was unusually hazardous. It appears elemental that pushing six railroad cars ahead of an engine across a highway, without sufficient light on the front car to warn motorists of the approach of the train, there being no flagman, signal light or bell at the crossing, would raise a jury question as to negligence in such respect. Under the circumstances here involved, it is our belief, and we so hold, that the wording

of the ninth issue was sufficient to present the question to the jury. A rather commonplace situation was involved. Assuming that the two red lanterns were attached to the front end of the car as testified by members of the crew, the substance of the ninth issue was whether or not lights of such kind were sufficient to warn appellee of the approach of the train. We overrule without further discussion the contention that the answers to the ninth and tenth issues had no support in the evidence.

This brings us to a consideration of the eleventh issue, which reads as follows: "Do you find from a preponderance of the evidence if any you have found in Special Issue No. 10 above, was the proximate cause of the collision and resulting damages, if any, to plaintiff?"

It will be observed that there was an omission, probably inadvertent, of the words "that such negligence" or some similar words from the eleventh issue. In Point 46, it is contended that it was error to submit the eleventh issue because, as worded, it was confusing, misleading, and unintelligible, and did not submit any ultimate or controlling issue to the jury. In Point 47 it is contended that the answer to the eleventh issue should have been set aside and disregarded because it was meaningless as a matter of law, and did not support the judgment. Under the same point it is contended that the issue was without support in the evidence.

Appellee suggests that the issue may be treated as a nullity, and that Rule 279, Texas Rules of Civil Procedure, may be invoked on the ground that the issue of proximate cause was not submitted, that there was no request for its submission and no objection to the charge on the ground that the issue of proximate cause was not submitted, and that it may be presumed that the trial court found on the issue in such manner as to support the judgment.

In the first place, it is our opinion, and we so hold, that the jury could not reasonably have been misled as to what inquiry was presented to them in the eleventh issue. The eleventh issue referred to such finding as may have been made in answer to the tenth issue, and no juror of ordinary intelligence could have believed that the eleventh issue was or pertained to anything other than an inquiry as to whether the negligence, if any, found in answer to the tenth issue was a proximate cause of the collision.

Appellant says that the eleventh issue did not submit any ultimate or controlling issue to the jury, and appellee seems to agree that it submitted nothing, although our view about it is that it did submit the issue of proximate cause, as has just been stated. If it did not submit any inquiry at all, then it is our opinion that appellant's objection to the charge did not distinctly point out to the trial court that the charge failed to contain an issue on proximate cause pertaining to the negligence inquired about in the tenth issue. Nor do we consider that the objection distinctly requested a submission of an issue on proximate cause. The issue was one on which appellee relied, and therefore appellant did not have to tender a prepared issue, but under Rule 274 it was necessary to point out distinctly any objection appellant might have to the charge. We have carefully considered the objections which appellant made to this issue. The objections to the charge, as shown in the transcript, covered about 30 typewritten pages, not counting requests for submission of issues. The objections to the eleventh issue were contained in paragraph No. 21 of the objections, which paragraph contained an opening statement and three numbered subdivisions. The first charged that the issue was confusing, misleading and unintelligible, and was not a distinct objection under Rule 274. The second objection was that the issue did not submit any ultimate or controlling issue to the jury. This cannot be converted into a request for a submission of a particular issue, or an objection that the charge failed to submit a particular issue. The third subdivision began with an objection that the eleventh issue was not conditioned upon the answer to the tenth issue, and in the same sentence it was declared that the eleventh issue did not "ask if the negligence as found in answer to Special Issue No. 10 was a proximate cause

of the collision and resulting damages, if any, and hence any answer to said issue would be meaningless and would not support a judgment." The last objection, taken by itself, might have been such a distinct objection as would have brought the matter to the attention of the trial judge, but it was buried up in a sentence, the first part of which referred to an altogether unrelated question. The omission in the issue was so obvious that an objection in a few simple words would have brought the defect to the attention of the trial court and he doubtless would have written the omitted words into the issue. The situation described is a proper one for the application of the portion of Rule 274 which reads as follows: "Where the objection made by the complaining party, or an instruction, issue, definition, or explanatory instruction requested by him, is in the opinion of the appellate court obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable."

■ It is our holding that the judgment is supported by the answers to the ninth, tenth and eleventh issues, without regard to other findings of negligence, whether on the theory of an implied finding of proximate cause, or on the theory that the eleventh issue was sufficient to present the proximate cause issue to the jury, or on the theory that proper objection was not made to the error in the eleventh issue.

The twelfth, thirteenth and fourteenth issues presented to the jury appellee's charge of negligence in the failure of the flagman or switchman who was riding on the front car to use a lantern in a proper manner so as to warn appellee of the approaching train of cars. Especially in view of what is said above with respect to the manner in which the train was being operated, we overrule the several objections made with reference to these issues. We do not discuss them further because we believe that the judgment is supported by the answers to the issues which we have discussed above without regard to the findings in answer to the three issues last mentioned.

A number of points of error pertain to the issues inquiring about contributory negligence. We have held that the evidence did not show contributory negligence as a matter of law, and we overrule appellant's other objections pertaining to that phase of the case.

Appellant has attacked many of the findings of the jury, both as being without any evidence to support them or as being against the undisputed evidence, and as being against the overwhelming weight of the evidence. We overrule all such contentions.

■ Appellant's brief appears to treat the case as being determinable on the question whether or not the claim of extraordinarily hazardous crossing was established by pleading and proof. It is our view that the judgment is supported by the findings of negligence in not having a sufficient light on the front car of the train, and negligence of the switchman in not using his lantern in a proper manner to warn persons of the approach of the train, or either of such findings without regard to the findings with respect to extra-hazardous crossing.

Appellee's vehicle was what is commonly known as a tractor and trailer. The tractor is sometimes referred to in the record as a truck, although it was not, by itself, designed for hauling, but was constructed in such manner that it was useful only for pulling the trailer. The tractor was damaged beyond repair, and no complaint is made of the amount of the verdict respecting the loss of the tractor.

■ It was proved that the annual license fee for the truck was $144.00, and that, after the truck was damaged beyond repair, the unused portion of the license for the year could not be transferred for use on another vehicle, nor could a refund be obtained for the unused portion of the year. Judgment for $111.00 was allowed to compensate appellee for the loss of the proportionate part of the year's license fee. Although neither party cites decisions for or against the allowance of this item, it seems to us that it was an item of damage proximately caused by the collision, and

such as could reasonably have been foreseen. Appellee lost the value of the unused portion of the year's license fee as a result of appellant's negligence, and it seems fair to allow him judgment to compensate him for the loss.

It was shown that the trailer could be repaired, although it had not been fully repaired at the time of trial. We overrule contentions that the pleadings and the proof were insufficient to support the finding of $792.00 as being the reasonable cost of repairs.

Recovery was allowed in the sum of $750.00 to compensate appellee for the loss of use of his truck and trailer until he could have the trailer repaired and could replace the truck. Objection is made that the pleadings and proof were insufficient to show the amount of damages suffered in this respect. Appellee testified in detail concerning his use of the truck, and the amount of profits he customarily earned. He had been engaged in such line of business for many years. It is our opinion that this item of recovery is not subject to the objections made by appellant.

All points of error are overruled, and the judgment of the trial court is affirmed.