**PORT TERMINAL RAILROAD ASSOCIATION, Appellant,**

v.

**Marcella Ann RICHARDSON; Joyce Marcella Michael, Individually and as Next Friend of Leatrice Elaine Michael; Richard Gregory Michael, Jr.; Russell Keith Michael; and Melanie Ann Michael, Appellees.**

No. C14–89–1176–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 14, 1991.

Rehearing Denied March 21, 1991.

502 ▪▪ 

Gordon A. Holloway, William A. Worthington, Ramon G. Viada, III, Kyle M. Rowley, Melanie Elwood, Houston, for appellant.

Carl Crow, Houston, Russell H. McMains, Corpus Christi, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

The plaintiff below recovered for injuries arising from a collision between an automobile and a train at a railroad crossing. Appellant raises thirteen points of error and appellees raise one cross-point. The judgment of the trial court is affirmed.

The decedent, Richard Michael, had been an employee at the Rohm & Haas chemical plant for almost thirty years. Its private roadway connects the plant with Highway 225. This road intersects two parallel sets of railroad tracks north of the entrance gate to the plant. A yellow and black warning disk is posted 325 feet north of the crossing. On the northwest and southeast corners of the crossing are 30 foot signal masts containing the standard railroad crossbuck sign and red flashing lights. A warning sign on these masts advises drivers to "stop on red signal." On the date of the collision, there were mercury vapor lights mounted atop each signal to illuminate the crossing at night. The road is straight and flat. A line of oak trees flanks both sides of the road. Port Terminal Railroad Association (PTRA) operates

the trains which cross the road approximately four or five times daily.

On the night of the accident, the decedent was leaving the plant, traveling south. At this time, PTRA was backing black tank cars in an easterly direction toward the crossing. The train foreman testified that PTRA rules required flagging a crossing when the train backs across the crossing. The train foreman testified that he flagged the crossing with an electric lantern in the center of the crossing, although other testimony indicated that he stood on the east side of the crossing. While the decedent approached the crossing from the north, another car was approaching from the south.

Appellees' expert, a traffic engineer, calculated that when the decedent was 375 feet from the crossing, the train car was 20 feet from the crossing, moving at 3–5 miles per hour. The decedent was traveling at 30–35 miles per hour. The oncoming car crossed the tracks and passed the decedent 200 feet north of the crossing. The driver of this vehicle testified he did not see the flagman or any red flashing lights, although others testified the signals were working. Based on skid marks and allowing for reaction time, appellees' expert calculated the decedent did not see the train until he was 148 feet from the crossing. At this point, the lead tank car was almost completely across the crossing. The decedent collided with the rear wheels of the lead car and was severely injured. He died two weeks later of his injuries.

The evidence further revealed that the decedent had vision problems. He was functionally blind in his right eye and had undergone corrective surgery to his left eye. The decedent's ophthalmologist testified that the decedent had 20/20 vision in his left eye with glasses. The decedent's family found his bloody, broken glasses in the automobile, indicating the decedent was wearing them when he hit the windshield.

Appellees sued PTRA and Rohm & Haas as the party responsible for maintaining the signal masts, alleging negligence and gross negligence. While the jury was deliberating, Rohm & Haas settled with appellees. The jury found PTRA negligent and grossly negligent by inadequately flagging the crossing and by failing to control the crossing. The jury exonerated Rohm & Haas. The jury apportioned ninety percent of the fault to PTRA and ten percent to the decedent. PTRA filed a motion for judgment n.o.v. The trial court granted this motion as to the finding of gross negligence and struck the punitive damages award.

In points of error one, two, and three, PTRA claims error in the submission of jury questions 1(1) and 2(1) regarding PTRA's inadequate flagging of the crossing. PTRA additionally claims under point four that no evidence or insufficient evidence supported the jury's finding of an extra-hazardous crossing, and thus, PTRA had no duty to use extraordinary means to warn drivers of the approaching train.

■ Because every railroad crossing is hazardous, statutes set out the minimum standard of safe conduct for both drivers and train operators. *Missouri Pac. R.R. Co. v. Shaw*, 620 S.W.2d 161, 163 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.). The operator of a train must erect crossbuck signs at railroad crossings and must sound a bell and whistle to warn drivers of an approaching train. TEX.REV. CIV.STAT.ANN. art. 6370–6371 (Vernon 1925 and Vernon Supp.1991). *See Shaw*, 620 S.W.2d at 163. Even if there is statutory compliance, the train operator may be liable for negligent operation or warnings that result in a collision with a vehicle. *See id.* at 164.

■ A driver of a vehicle using a crossing must exercise ordinary care to discover and avoid approaching trains. *See id.* Similarly, the train operator must exercise reasonable care and caution to avoid collisions with vehicles. *See id.* A train operator has the duty to use extraordinary measures to warn drivers of an approaching train only if the railroad crossing is "extra-hazardous." *See Osuna v. Southern Pac. R.R.*, 641 S.W.2d 229, 230 (Tex. 1982); *Missouri Pac. R.R. Co. v. Cooper*, 563 S.W.2d 233, 235 (Tex.1978). These "extraordinary" measures may include signal

bells or lights at the crossing, lights on the train cars, or flagging the crossing. *See Texas & N.O.R. Co. v. Compton*, 135 Tex. 7, 136 S.W.2d 1113, 1115 (1940).

■ A crossing is extra-hazardous if it is "so dangerous that persons using ordinary care cannot pass over it in safety without some warning other than the usual cross arm sign." *See Cooper*, 563 S.W.2d at 235. Poor visibility resulting from darkness or fog does not render a crossing extra-hazardous. *See id.; Missouri–Kansas–Texas R.R. Co. v. Bernhardt*, 418 S.W.2d 368, 374 (Tex.Civ.App.—Austin 1967, writ ref'd n.r. e.). In *Bernhardt*, the court stated:

> It is the settled rule in this state that a train lawfully standing on a crossing at night does not of itself cause the crossing to be more than ordinarily dangerous. If the night is dark and foggy and visibility is bad, these additional conditions will not, even when coupled with the presence of the train, make the crossing an extrahazardous nighttime crossing.

*Bernhardt*, 418 S.W.2d at 374.

■ A crossing may be classified as extra-hazardous, however, if a permanent or temporary condition obstructs a driver's view of an approaching train. *See Karr v. Panhandle & Santa Fe Ry. Co.*, 153 Tex. 25, 262 S.W.2d 925, 930 (1953). If a temporary condition is alleged, the condition "must be due to some act or omission of the railway employees, because only under those circumstances could the defendant know or fairly be charged with knowledge that the crossing is temporarily extra-hazardous." *Id.*

Even if a crossing is extra-hazardous, Texas courts hold as a matter of law that "the presence of railroad cars occupying the crossing directly in front of the driver" is a sufficient additional warning. *Osuna*, 641 S.W.2d at 230. In *Texas City Terminal Ry. Co. v. Allen*, 181 S.W.2d 727 (Tex. Civ.App.—Galveston 1944, writ ref'd), the court offered the following explanation of the "occupied crossing" rule:

> While it is the uniformly recognized rule in this state that, where a railroad crossing is more than ordinarily dangerous to night time travelers, it is incumbent upon the railroad company to take more than ordinary measures to apprise travelers approaching the crossing that such dangers exist, our courts under facts similar in all material respects to the facts in the instant case, have held that the operatives of trains could properly assume that persons traveling upon the highway would exercise the care incumbent upon them in the hazards of the night to keep their cars under control so as to be able to avoid colliding with objects which should have been disclosed by their headlights.

*Id.* at 729 (citations omitted).

Under Texas case law, PTRA owed a duty to use extraordinary warnings, such as flagging the crossing, only if the crossing was extra-hazardous. In point of error four, PTRA challenges the legal and factual sufficiency of the evidence supporting the jury's finding of an extra-hazardous crossing. Where a party claims no evidence supports a finding, we may consider only the evidence and inferences supporting the challenged finding, disregarding all contrary evidence and inferences. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). The only evidence tending to support the finding of extra-hazardous crossing was the presence of trees on both sides of the roadway that restricted motorists' view of approaching trains. This is more than a scintilla of evidence. *See Southwest Stone Co. v. Symons*, 237 S.W.2d 380, 384 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.). PTRA's claim of no evidence is overruled.

■ In reviewing a factual sufficiency challenge, all of the evidence must be considered and the finding set aside "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The evidence showed that, at the time of the collision, visibility was poor due to darkness, poor lighting at the crossing, and trees on both sides of the road. This evidence is sufficient to support the jury's finding. Point of error four is overruled.

In point of error three, PTRA claims that appellees failed to request and obtain a jury finding that PTRA had notice of the extra-hazardous condition. PTRA objected to the submission of jury question one regarding negligence on several grounds including the ground that a railroad company had a duty to flag only where the crossing is extra-hazardous and the railroad company has notice of the extra-hazardous condition. PTRA did not specifically object to the failure to submit an issue on notice.

Case law discusses both permanent and temporary extra-hazardous conditions. Where the alleged condition is temporary, Texas courts hold that a railroad company cannot, in all fairness, be charged with knowledge of the condition unless some act or omission by the railroad company caused the temporary condition. *See Karr*, 262 S.W.2d at 930. Case law does not specifically state that defendants must have notice of permanent conditions. *See Southwest Stone Co. v. Symon*, 237 S.W.2d 380, 386 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.). In *Missouri, K. & T.R. Co. v. Long*, 23 S.W.2d 401 (Tex.Civ.App.—Austin 1929, writ ref'd), the court reviewed jury findings that a crossing was unusually hazardous. The court upheld this finding because the evidence showed that the crossing was in a depression in the road and several witnesses testified to the difficulty of seeing a train on this crossing. *See id.* at 402. The court reasoned that evidence of conditions continuously in existence for a long period of time supported a jury's determination that the railroad company, as an ordinary prudent person, should have known about the conditions. *Id.* at 402–03. The *Long* court did not address whether the issue of notice was required.

The conditions complained of, including the lighting and the trees on both sides of the road, were permanent conditions. The continuous existence of these conditions was such that PTRA, as an ordinary prudent person, knew or should have known of them. No case law has required the submission of an issue specifically inquiring as to whether the defendant had notice of the condition. Thus, where the condition is permanent, such an issue is not required. Even if it were so held, the omission of this issue would be deemed found in support of the judgment where no objection was made and some evidence supported the omitted element. *See Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex.1990). PTRA did not object to the trial court's failure to submit an issue on notice. Furthermore, the trees on both sides of the roadway were a permanent condition of which, PTRA, as an ordinary prudent person, should have been aware. Point of error three is overruled.

PTRA claimed that the trial court erred in submitting jury questions inquiring whether PTRA inadequately flagged the crossing. Because the jury found the crossing was extra-hazardous, PTRA had the duty to use extraordinary measures to warn drivers of the approaching train. *Osuna*, 641 S.W.2d at 230. Even if the crossing is extra-hazardous, however, Texas courts hold as a matter of law that "the presence of railroad cars occupying the crossing directly in front of the driver" is a sufficient additional warning. *Id.*

Appellees argue that the "occupied crossing" cases are distinguishable from the instant case because they involve situations where the driver failed to observe the obvious hazard and collided, not with the first train car, but with a subsequent train car. *See Texas & N.O.R. Co. v. Compton*, 135 Tex. 7, 136 S.W.2d 1113, 1114 (1940) (vehicle collided with sixtieth train car); *Texas City Terminal Ry. Co. v. Allen*, 181 S.W.2d 727, 729 (Tex.Civ.App.—Galveston 1944, writ ref'd) (vehicle hit fourth train car); *Texas N.O.R. Co. v. Stratton*, 74 S.W.2d 746, 746 (Tex.Civ.App.—San Antonio 1934, writ ref'd) (vehicle hit fourth train car). Thus, the question to be determined is whether the train was occupying the crossing in such a manner that the decedent should have been able to see it and stop in time to avoid the collision.

PTRA's flagman testified that he stood on the roadway and attempted to flag motorists to warn of the train. Although the

flagman testified that he was in the center of the road, other witnesses testified that he stood on the opposite side of the road from decedent's lane. Appellees' expert, Mr. Hudson, testified that decedent's headlights should have illuminated the crossing when the decedent was 500 feet from the crossing. Hudson also stated that the headlights of an oncoming vehicle may have interfered with the decedent's view of the flagman. The testimony indicates that the oncoming vehicle passed the decedent's car when the decedent was approximately 200 feet from the crossing. Hudson estimated that the decedent could have stopped his vehicle in time to avoid the collision if he had seen the train and begun reacting at a point 165 feet from the crossing. Testimony further revealed that when the decedent was 148 feet from the crossing or 3.6 seconds from impact, the train was completely occupying the crossing in the decedent's lane. Hudson testified that his calculations assumed the train was backing across the crossing at 3–5 miles per hour, or about 7.3 feet per second. Thus, when the decedent passed the oncoming vehicle at approximately 200 feet from the crossing, or about 4.6 seconds from impact, the train occupied much of the crossing in decedent's lane. Based on the skid marks measuring 28 feet and an estimated reaction time of two and a half seconds, Hudson concluded that the decedent did not observe the train's presence until he was 148 feet from the crossing, too close to avoid the collision.

The "occupied crossing" cases are thus inapplicable here. The first tank car was slowly backing over the crossing as the decedent approached. The tank car was not occupying the decedent's lane until the decedent was approximately 200 feet from the crossing or 4.6 seconds from impact. Furthermore, the testimony shows that the decedent did observe the train and begin to react one second later, when the train was completely occupying the decedent's lane and partially occupying the opposite lane. In the "occupied crossing" cases, the trains had crossed both lanes of the roadway, completely occupying the crossing, at a point where a driver exercising reasonable care could have observed the train and safely stopped. *See Compton*, 136 S.W.2d at 1114–15 (driver hit sixtieth of eighty-seven railroad cars); *Missouri–Kansas–Texas R.R. Co. v. Bernhardt*, 418 S.W.2d 368, 376–77 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.) (vehicle hit side of train where eleven railroad cars occupied one side of the crossing and balance of train occupied about a mile of tracks on the other side of the crossing); *Panhandle & Santa Fe Ry. Co. v. Liscomb*, 365 S.W.2d 190, 192–97 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r.e.) (vehicle hit fourth of seven cars plus the engine); *Texas & N.O.R. Co. v. Stratton*, 74 S.W.2d 746, 746–48 (Tex.Civ.App.—San Antonio 1934, writ ref'd) (vehicle hit fourth of eight railroad cars). Here, the train was slowly moving into and over the decedent's lane as the decedent approached the crossing. Under the circumstances, the train did not occupy the crossing in such a way that, as a matter of law, the presence of the train was a sufficient warning. Thus, the trial court did not err in submitting the jury questions inquiring about PTRA's inadequate flagging. Points of error one and two are overruled insofar as they challenge the submission of these questions.

PTRA also challenges the trial court's denial of its motion for judgment n.o.v. and to disregard jury findings. PTRA contends that the trial court erred in overruling this motion because the train was plainly visible on the crossing and thus, no evidence supports the jury's finding of negligence and proximate cause. Disregarding a jury's finding is appropriate where the finding is immaterial or where no evidence supports the finding. *See Stout v. Clayton*, 674 S.W.2d 821, 825 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). If there was some evidence upon which the jury could have based its findings which amounted to more than a mere suspicion or surmise, it must be sustained. *Id.* at 826. The evidence must be viewed in the light most favorable to the jury findings, considering only the evidence and inferences supporting those findings. *Id.* at 824.

There is some evidence supporting the jury's findings. There was testimony that the flagman was standing on the opposite side of the road, rather than in the center. The train was entering the crossing at the same time that the decedent was approaching it. Appellees' expert could not give an exact distance at which the decedent's headlights would illuminate the crossing. Furthermore, the flagman testified that he stopped flagging and climbed aboard the lead car as the train crossed the crossing.

PTRA alternatively argues that the jury's findings in response to question 6(5) negate any duty on the part of PTRA to flag or control the crossing. Jury question 6(5) asked the jury to determine whether the decedent's failure to stop within 50 to 15 feet of the crossing constituted negligence. The jury received the following instruction for this question:

> 5. In addition, "negligence" when used with respect to the conduct of [the decedent] also means a failure to stop within 50 feet, but not less than 15 feet, from the nearest rail of the crossing when (a) an approaching train is plainly visible and is in hazardous proximity to the crossing; or (b) a clearly visible electric or mechanical signal device gives warning of the immediate approach of a train; or (c) a human flagman gives or continues to give a signal of the approach or passage of a train.

Because the jury found the decedent negligent in failing to stop, PTRA contends the jury necessarily found the decedent failed to stop despite receiving at least one of the three disjunctively submitted warnings. Thus, PTRA argues that the jury's finding of at least one of the disjunctively submitted warnings negates any duty on the part of PTRA to provide an additional warning. PTRA further argues that, because appellees failed to object to the disjunctive submission, this court must hold that the jury found all three elements.

PTRA failed to raise this argument in its motion for judgment n.o.v. To preserve a complaint for appellate review, a party must present a timely request, objection, or motion, stating the specific grounds for the ruling desired if the specific grounds are not apparent from the context. *See* Tex.R. App.P. 52; *Olson v. Bayland Publishing, Inc.* 781 S.W.2d 659, 664 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Because PTRA failed to raise this argument in the trial court, PTRA has not preserved this complaint for review. Points of error one and two are overruled.

■ Jury questions 1(2) and 2(2) asked the jury whether PTRA was negligent in failing to control the crossing. PTRA contends in point of error five that it had no duty to "control" the crossing. This is correct. Where a crossing has been held extra-hazardous, the railroad company has the duty to use extraordinary methods of warning drivers of an approaching train. *See Osuna*, 641 S.W.2d at 230. These "extraordinary" methods may include signal bells or lights at the crossing, lights on the train cars, or utilizing a flagman at the crossing. *See Compton*, 136 S.W.2d at 1115. No case law discusses a railroad company's duty to control the crossing by either stopping the train or stopping vehicles approaching the crossing.

■ Although the submission of these issues may have been error, such error is reversible only if, "when viewed in the light of the totality of [the] circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment." *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986); Tex.R.App.P. 81(b)(1). The submission of these issues did not cause there to be an improper judgment. Rather, the judgment for appellees was supportable on the jury's finding of inadequate flagging of the crossing. Submission of these issues did not constitute reversible error. Point of error five is overruled.

In point of error six, PTRA claims the trial court erred in overruling its motion for a new trial because the jury's apportionment of comparative negligence was against the great weight and preponderance of the evidence. A trial court has wide discretion in denying a motion for new

trial. Its decision may no be disturbed absent a showing of abuse of discretion. *Balias v. Balias, Inc.*, 748 S.W.2d 253, 257 (Tex.App.—Houston [14th Dist.] 1988, writ denied). In support of its contention, PTRA presents the arguments raised in points of error one through five. Since these were overruled, point of error six is likewise overruled.

■ In point of error seven, PTRA argues that, under *Merit Drilling Co. v. Honish*, 715 S.W.2d 87, 90 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), its election to take a credit for the amount of any settlement entitles it to a $750,000 deduction from the total damages award, since this is the amount of the Rohm & Haas settlement. In *Honish*, the court noted that a non-settling defendant may elect to take a credit for the amount of the settlement or submit the negligence of the settling defendant to the jury for a percentage determination. *Id.* Where the non-settling defendant chooses to submit the settling defendant's negligence to the jury, the non-settling defendant is limited by statute [1] to a proportionate reduction of damages. *See Honish*, 715 S.W.2d at 90 (construing TEX. REV.CIV.STAT.ANN. art. 2212a, § 2(e), repealed in 1973 by Act approved April 9, 1973, 63rd Leg., R.S., ch. 28, 1973 Tex.Gen. Laws 41, 41); *Dabney v. Home Ins. Co.*, 643 S.W.2d 386, 389–90 (Tex.1982); *Cypress Creek Util. Serv. Co., Inc. v. Muller*, 640 S.W.2d 860, 863–65 (Tex.1982).

Here, the settlement was not reached until after the jury began deliberations. Thus, PTRA had no election to make before the deliberations began. Although PTRA advised the court of its desire to elect a credit for the amount of any settlement reached, the jury considered the question whether Rohm & Haas was negligent and they exonerated Rohm & Haas of any liability. The jury instead found PTRA responsible for ninety percent of the negligence and the decedent responsible for the remaining ten percent. Because the question of the negligence of Rohm & Haas was

submitted to the jury, PTRA is entitled only to a proportionate reduction of the total damages. The trial court reduced the damages awarded by the ten percent negligence attributable to the decedent. There is no error in the trial court's refusal to credit the amount of the Rohm & Haas settlement. Point of error seven is overruled.

■ In point of error eight, PTRA claims error in the submission of a jury question requiring the jury to award lump sum damages for appellees' pecuniary losses, loss of companionship and society, and mental anguish. PTRA contends that the evidence was legally and factually insufficient to support submission of such a question as to all of decedent's children. In point of error nine, PTRA claims that the trial court erred in denying PTRA's motion for new trial because any finding that the adult children of the decedent suffered loss of prospective support was against the great weight and preponderance of the evidence.

Jury question no. 10 asked the jury to determine the amount of damages suffered by appellees for loss of companionship, mental anguish, and pecuniary loss. The jury awarded each of decedent's children $32,000 for such damages suffered in the past and $45,000 for such damages that would, in reasonable probability, be suffered in the future. Pecuniary loss was defined in the charge as "the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, that the Plaintiffs would, in reasonable probability, have received from [the decedent] had he lived." Pecuniary losses represent direct economic losses. *See Moore v. Lillebo*, 722 S.W.2d 683, 687 (Tex.1986). PTRA argues that all but one of the children had reached majority at the time of their father's death and that little or no evidence supported awarding damages to them for lost support.

Only one daughter, Leatrice Michael, was a minor, living at home at the time of

---

**1.** TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.012–33.013, 33.015, effective at the time the instant suit was filed, has been amended. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.012, 33.014 (Vernon Supp. 1991).

the decedent's death. There is no evidence indicating that any of the other children expected to receive support from the decedent. Thus, the trial court erred in submitting a damage issue as to loss of support suffered by any of the decedent's children other than Leatrice Michael. Such error is not ground for reversal unless the error "amounted to such a denial of the rights of the PTRA as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case...." TEX.R.APP.P. 81(b)(1).

■ Here, such submission did not constitute reversible error. Because the awards include amounts for mental anguish and loss of companionship, it cannot be determined what amount, if any, represents the jury's award for pecuniary loss and what amounts represent awards for loss of society and mental anguish. PTRA does not challenge the sufficiency of the evidence supporting these awards to the extent that they include damages for loss of companionship and society and for mental anguish. The testimony of the children supports the jury's award for these elements of damage. Points of error eight and nine are overruled.

■ In point of error ten, PTRA contends that the trial court erred in permitting testimony of the decedent's post-event statements that the flasher signals at the crossing were not operating. Even if the court erred in admitting this evidence, this error does not require reversal unless the error was calculated to cause and probably did cause rendition of an improper judgment. *Harrison v. Texas Employers Ins. Ass'n*, 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied); TEX.R.APP.P. 81(b)(1). Reversible error usually does not occur in connection with evidentiary rulings unless the appellant can demonstrate that the whole case turns on the particular evidence admitted. *Texaco, Inc. v. Pennzoil*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

The first witness to testify to decedent's statements was Robert Kennedy, a Rohm & Haas shift supervisor who drove the ambulance that took the decedent to the hospital on the night of the accident. Kennedy testified that, while he was helping the decedent out of his car, the decedent told him that the signals were not working. PTRA made a general objection to this testimony and, although the trial judge did not rule on this objection, he instructed the jury to disregard the testimony. This cured any error.

Russell Keith Michael, a son of the decedent, also testified as to the decedent's statement in the hospital that the signals were not flashing. PTRA did not object to this testimony. Absent an objection, PTRA waived any error in the admission of this testimony. *See City of San Antonio v. Vela*, 762 S.W.2d 314, 319 (Tex.App.—San Antonio 1988, writ denied); *Lamb County Hosp. Appraisal Dist. v. South Plains Hosp. Clinic, Inc.*, 688 S.W.2d 896, 908 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.).

■ The decedent's wife, Joyce Michael, testified that when she arrived at the hospital, the decedent stated that the crossing lights were not on. Before Joyce Michael's testimony about this statement, PTRA had advised the court of its hearsay objection to any testimony about conversations with the decedent. The court overruled this objection. PTRA claims that Joyce Michael's testimony is hearsay that does not fall within the Rule 803(2) exception for excited utterances because the decedent was beyond the excitement of the event at the time he made the statement. The testimony objected to here is the same as that given by Russell Keith Michael to which PTRA failed to object. Having previously allowed introduction of the same evidence without objection, PTRA waived the right to claim that subsequent introduction of the same evidence constituted error. *See Commercial Union Ins. Co. v. La Villa Indep. School Dist.*, 779 S.W.2d 102, 110 (Tex.App.—Corpus Christi 1989, no writ); *Badger v. Symon*, 661 S.W.2d 163, 164 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Point of error ten is overruled.

■ In point of error eleven, PTRA claims the trial court erred in refusing to submit PTRA's tendered jury instruction: "You are instructed that the sum of money, if any, you award will not be subject to any income taxes, and you should not consider income taxes in fixing the amount you award." Texas law does not require submission of such an instruction when requested, *see Turner v. General Motors Corp.*, 584 S.W.2d 844, 853 (Tex.1979)

The Supreme Court held in *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 494, 100 S.Ct. 755, 757–58, 62 L.Ed.2d 689 (1980) that a defendant in an FELA action is entitled to an instruction that damage awards are not subject to federal income taxation. This rule is not necessarily applicable in all federal actions. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 628 S.W.2d 171, 174 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), *cert. denied*, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982). Because the instant case is a statutory wrongful death action brought in state court, *Liepelt* is inapplicable. Under Texas law, the refusal to instruct the jury that damage awards are not subject to federal income taxation is not error because such an instruction introduces an immaterial collateral matter. *Turner*, 584 S.W.2d at 853. Point of error eleven is overruled.

In point of error twelve, PTRA contends that the trial court erred in refusing to strike the testimony of appellees' economist, Dr. Huddle, or alternatively, in refusing to allow cross-examination of Dr. Huddle on the amount of federal income taxes the decedent would have paid on his earnings. PTRA again relies on *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 494, 100 S.Ct. 755, 757–58, 62 L.Ed.2d 689 (1980). As previously discussed, this is not the law in Texas. *See Turner*, 584 S.W.2d at 853; *Caterpillar Tractor Co. v. Gonzales*, 599 S.W.2d 633, 638 (Tex.Civ.App.— El Paso 1980, writ ref'd n.r.e.); *Hansen v. Johns–Manville Prod. Corp.*, 734 F.2d 1036, 1045 (5th Cir.1984), *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). Point of error twelve is overruled.

■ In its final point of error, PTRA claims that the trial court erred in overruling its motion for a new trial because the verdict contained a fatal conflict in the jury's answers. PTRA complains about the jury's response to the following question:

### QUESTION NO. 6

Did the negligence, if any, of [the decedent] proximately cause the collision in question?

This question then presented five elements for determination, including lookout, speed, brakes, vision, and failure to stop within 50 to 15 feet from the crossing. The jury found negligence only in the decedent's failure to stop within 50 to 15 feet. The jury further found that this was a proximate cause of the accident. The jury did not find the decedent negligent in driving with inadequate vision, but they did find this act a proximate cause. PTRA contends that question 6(4) predicated a finding of proximate cause on a finding of negligence and thus, the jury's answers present a fatal conflict.

In *Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 991 (Tex.1949), the court explained the test for determining whether jury answers fatally conflict:

[T]he court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered.

■ *See also National Union Fire Ins. Co. v. De La Cruz*, 781 S.W.2d 697, 704

(Tex.App.—San Antonio 1989, writ denied). It must be presumed that the jurors did not intend to give conflicting answers, *Allied Bank West Loop v. C.B.D. & Assoc., Inc.,* 728 S.W.2d 49, 56 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), and a judgment will not be reversed if there is any reasonable basis upon which the jury's answers can be reconciled. *See Straite v. Krisman,* 737 S.W.2d 80, 83 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Woodyard v. Hunt,* 695 S.W.2d 730, 732 (Tex.App.—Houston [1st Dist.] 1985).

Disregarding the jury's answer of "No" to negligence or of "Yes" to proximate cause would not result in entry of a different judgment. The jury's answers do not fatally conflict and the trial court did not err in overruling PTRA's motion for a new trial on this basis. Point of error thirteen is overruled.

■ In its sole cross-point, appellee claims the trial court erred in granting PTRA's motion for judgment n.o.v. and to disregard jury findings on questions 2 and 12 regarding gross negligence and punitive damages. In its motion for judgment n.o.v. and to disregard jury findings, PTRA challenged the jury's findings under the following question:

### QUESTION NO. 2

Was such negligence of the Port Terminal Railroad Association train crew "gross negligence"?

"Gross negligence" means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

Answer "Yes" or "No" as to each element:

| | | |
|---|---|---|
| 1. | Flagging | Yes |
| 2. | Control | Yes |
| 3. | Brakes | No |

Having answered "Yes" to question 2, the jury assessed $1,000,000 in exemplary damages against PTRA in question 12. PTRA contended the jury's finding in response to question 2 could not alone support holding PTRA vicariously liable for the gross negligence of its train crew. Furthermore,

PTRA argued that no evidence supported the jury's finding. The trial court granted PTRA's motion and disregarded the jury's findings in questions 2 and 12.

PTRA's motion was essentially one to disregard jury findings. Disregarding a jury finding is appropriate where the finding is immaterial or where no evidence supports the finding. *See Stout v. Clayton,* 674 S.W.2d 821, 825 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). PTRA did not ask the trial court to disregard these findings on the ground that they were immaterial. Thus, it must be determined whether any evidence supports the jury's findings that the train crew's inadequate flagging and failure to control the crossing constituted gross negligence.

To show gross negligence, a plaintiff must not only show "an entire want of care," but also "conscious indifference" to the affected person's rights, welfare, or safety. *See Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981). Appellees had to show that PTRA's train crew knew of the danger, but their acts or omissions demonstrated that they did not care. *See id.* In determining whether there is some evidence supporting the jury's finding of gross negligence, a reviewing court must "look to all of the surrounding facts, circumstances, and conditions, not just individual elements or facts." *Id.* All acts or omissions indicating "conscious indifference to the rights, welfare, or safety" of persons affected must be examined in deciding if some evidence of gross negligence exists. *See id.* at 920, 922. The evidence must be considered " 'in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor'." *Id.* at 922 (quoting *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex.1970)).

The flagman testified that, when the train stopped and began to back across the crossing, he stood in the center of the roadway and attempted to warn approaching cars by swinging a light. Another crew member testified that the flagman stood on the east side of the road while

flagging, rather than in the center. Several witnesses testified that PTRA required its flagmen to flag a crossing whenever they were backing cars across the crossing. The flagman stated that the purpose of flagging was to signal drivers to stop. The flagman further testified that he continued flagging until the first tank car was almost completely occupying the crossing and then he climbed on this car, although he admitted the decedent's car had not slowed down. Witnesses who were in another vehicle that crossed over the crossing a few seconds before the collision testified that they did not see the flagman or the train until their car was 12–15 feet from the crossing. The flagman testified that his standard practice was to flag vehicles and, if necessary, radio the engine crew to stop the train. The flagman did not recall using his radio on this occasion until after the collision.

PTRA's requirement that its crew flag crossings where the train is backing across the crossing shows that PTRA and its crew knew of the danger to approaching cars. Although the jury could have found that the flagging was inadequate, this does not demonstrate "conscious indifference" to the safety of approaching drivers. Thus, there is no evidence supporting the jury's finding of gross negligence.

PTRA also contends that appellees failed to submit issues essential to sustain corporate liability and that omitted issues are deemed found in support of the judgment. Accordingly, PTRA claims that appellees must rebut the presumption of deemed findings by demonstrating that the omitted elements of corporate authorization were established as a matter of law. We disagree with PTRA's analysis. Rule 279 provides:

When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding there-

on, the trial court, at the request of either party, may after notice and hearing and at any time before judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment.

TEX.R.CIV.P. 279. Here, PTRA objected to questions 2 and 12 on the ground that no pleadings entitled appellees to recover for gross negligence. PTRA further objected to question 2 on the ground that there was "no legal basis alleged or proved that would entitle the plaintiffs to recover for gross negligence...." PTRA did not object to the failure to submit an issue regarding corporate authorization, ratification, or approval and PTRA does not challenge on appeal the failure to submit this issue. Thus, Rule 279 and case law regarding the standard of appellate review for omitted issues is inapplicable here.

Because no evidence supports the jury's finding of gross negligence, the trial court did not err in granting PTRA's motion to disregard the jury's findings in response to questions 2 and 12. Appellees' cross-point is overruled.

The judgment of the trial court is affirmed.

ELLIS, Justice, dissenting.

Upon appellees' motion for rehearing, I find that I disagree with the majority's holding that the trial court properly disregarded the jury's finding of gross negligence and properly deleted the award of punitive damages. Accordingly, I now respectfully dissent.

In the instant case, the jury found that PTRA's inadequate flagging of the crossing and failure to control the crossing constituted gross negligence. PTRA filed a motion asking the trial court to disregard this jury finding. The trial court granted PTRA's motion and disregarded this finding. In conjunction with disregarding the jury's finding as to gross negligence, the

trial court deleted the jury's award of punitive damages. The majority upholds the trial court's ruling by finding no evidence to support the jury's finding of gross negligence.

In reviewing the trial court's grant of a motion for judgment n.o.v., an appellate court must view the record in the light most favorable to the jury's finding, considering only the evidence and inference supporting that finding. *Navarette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 309 (Tex.1986). If more than a scintilla of competent evidence supports the finding, we must reverse the trial court's judgment n.o.v. *Id.*

Unlike the majority, I find more than a scintilla of evidence supporting the jury's finding of gross negligence. As stated by the majority, gross negligence is a lack of care that amounts to "conscious indifference" to the decedent's rights, welfare, or safety. *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). In the instant case, the record contains testimony that the flagman stood on the side of the road and not in the center. The driver and passenger of the oncoming vehicle, who were in the closest lane to the flagman, testified that they did not see the flagman or the train until they were upon the crossing. After this vehicle crossed the crossing, the flagman stopped flagging and climbed aboard the train despite his awareness that the decedent's vehicle had not slowed down. The jury could have determined that the decedent's failure to begin reducing his vehicle speed indicated that the decedent had not observed the flagman's warning and that, despite this indication, the flagman discontinued any warning of the approaching train. This is some evidence that PTRA acted with conscious indifference to the safety of the decedent.

Because some evidence supports the jury's finding of gross negligence, the trial court erred in granting appellant's motion for judgment n.o.v. and in disregarding the jury's finding of gross negligence and its award of punitive damages. I would sustain appellees' cross-point and render judgment that appellees recover the punitive damages awarded by the jury.